No. 22-3765

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**KEVIN D. HARDWICK**,
*Plaintiff-Appellee,*

v.

**3M COMPANY, et al.**,
*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Southern District of Ohio
Case No. 2:18-cv-1185
The Honorable Edmund A. Sargus, Jr.

_____

**BRIEF OF PLAINTIFF-APPELLEE KEVIN D. HARDWICK**

_____

Robert A. Bilott                David J. Butler
Aaron M. Herzig                 Jonathan N. Olivito
William E. Braff                Taft Stettinius & Hollister LLP
Taft Stettinius & Hollister LLP 41 S. High Street, Suite 1800
425 Walnut Street, Suite 1800   Columbus, OH 43215
Cincinnati, OH 45202            Phone: (614) 221-2838
Phone: (513) 381-2838           dbutler@taftlaw.com
bilott@taftlaw.com             jolivito@taftlaw.com
aherzig@taftlaw.com
bbraff@taftlaw.com

*Counsel for Plaintiff-Appellee Kevin D. Hardwick*

# CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and 6 Cir. R. 26.1,

Plaintiff-Appellee Kevin D. Hardwick makes the following disclosures:

1.      Are any parties a subsidiary or affiliate of a publicly owned corporation?

   No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   No.


Dated: March 3, 2023                    */s/ Robert A. Bilott*_____
                                        Robert A. Bilott

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT …………………………… i

TABLE OF CONTENTS ………………………………………………… ii

TABLE OF AUTHORITIES …………………………………………... v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ……………………… xiii

STATEMENT OF JURISDICTION …………………………………... 1

INTRODUCTION …………………………………………………... 2

STATEMENT OF THE ISSUES ……………………………………… 5

STATEMENT OF THE CASE …………………………………………... 6

    A.    Defendants contaminated Mr. Hardwick and the class members with toxic, biopersistent, and bioaccumulative PFOA and other PFAS. … 6

    B.    The history and results of the *Leach* class action and C8 MDL show the dangers of PFOA—and the feasibility of the relief requested here. ………………………………………………………….. 8

    C.    Mr. Hardwick sues, defeats Defendants' motions to dismiss, and obtains certification of a limited, objectively defined class. ………. 12

    D.    The motions panel's order misapprehends this case and the district court's class certification order. …………………………………… 14

SUMMARY OF THE ARGUMENT …………………………………… 16

ARGUMENT …………………………………………………………… 18

    I.    Mr. Hardwick has Article III standing. ……………………… 18

        A.    Mr. Hardwick need not establish evidentiary proof for standing at the certification stage. …………………………………… 19

B.    Harmful PFAS in Mr. Hardwick's blood show an injury in fact. ……………………………………………………………… 20

C.    Mr. Hardwick's injury is fairly traceable to Defendants. …... 25

D.    The requested injunctive relief redresses Mr. Hardwick's injury. ……………………………………………………………… 27

II.    Mr. Hardwick meets the Rule 23 class requirements. ……………... 29

A.    The certified class satisfies Rule 23(a)'s commonality requirement. …………………………………………………… 30

1.    Defendants' allegedly individualized inquiries miss the mark. ……………………………………………………… 30

2.    Rule 23(a)'s commonality requirement is satisfied. …. 32

B.    Rule 23(b)(2) has no cohesion requirement. ……………….... 36

1.    Neither text nor precedent recognizes "cohesiveness." 36

2.    This class action satisfies any "cohesiveness" requirement. …………………………………………….. 37

III.    Mr. Hardwick has requested valid injunctive relief under Rule 23(b)(2). ……………………………………………………… 40

A.    Medical monitoring with accompanying scientific studies is injunctive relief. …………………………………………….. 41

B.    The district court can order medical monitoring with accompanying studies as a form of injunctive relief. ………. 43

C.    The Rules Enabling Act does not prohibit the requested relief. ……………………………………………………………… 48

IV.    Mr. Hardwick has adequately described the requested injunctive relief. ……………………………………………………………… 49

iii

A.    Mr. Hardwick sufficiently identified the injunctive relief sought by the class. ……………………………………………… 49

B.    Mr. Hardwick need not satisfy the level of specificity arbitrarily demanded by Defendants. …………………………….... 51

C.    The case law cited by Defendants and the motions panel does not support the arbitrary level of specificity demanded by the Defendants. …………………………………………… 52

V.    The district court properly defined the class. ……………………… 55

A.    Ascertainability is not a requirement of class certification here. ……………………………………………………… 55

B.    Blood serum concentration testing is unnecessary, and purported testing obstacles are therefore irrelevant. ………... 57

CONCLUSION ……………………………………………………… 58

CERTIFICATE OF COMPLIANCE …………………………………… 59

CERTIFICATE OF SERVICE ………………………………………….. 60

ADDENDUM – DESIGNATION OF RELEVANT DOCUMENTS ………... 61

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*In re 3M Co.*,
No. 22-0305, 2022 WL 4149090 (6th Cir. Sept. 9, 2022) .....................14, 37, 41, 52

*Alexander v. Bosch Auto. Sys., Inc.*,
232 F. App'x 491 (6th Cir. 2007) ............................................................47

*Allen v. Leis*,
204 F.R.D. 401 (S.D. Ohio 2001) ............................................................37

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1995) ..................................................................33

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) ..........................................................................31, 32

*Anderson v. Wade*,
33 F. App'x 750 (6th Cir. 2002) ..............................................................45

*Ashker v. Governor of State of California*,
No. C 09-5796 CW, 2014 WL 2465191 (N.D. Cal. June 2, 2014) ........................51

*Baker v. Chevron U.S.A., Inc.*,
533 F. App'x 509 (6th Cir. 2013) ............................................................21

*Baker v. Saint-Gobain*,
232 F. Supp. 3d 233 (N.D.N.Y. 2017) ......................................................21

*Ball v. Union Carbide Corp.*,
385 F.3d 713 (6th Cir. 2004) ..................................................................31

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3rd Cir. 1998) ..................................................................39

*Barth v. Firestone Tire & Rubber Co.*,
661 F. Supp. 193 (N.D. Cal. 1987) ......................................................42, 47

*Benoit v. Saint-Gobain Performance Plastics, Corp.*,
959 F.3d 491, 501 (2d Cir. 2020) ........................................................35, 48

*Bovee v. Coopers & Lyband*,
216 F.R.D. 596 (S.D. Ohio 2003) ..................................................................33, 34

*Brown v. Plata*,
563 U.S. 493 (2011) ..................................................................................44

*Bucholz v. Meyer Njus Tanick, PA*,
946 F.3d 855 (6th Cir. 2020) ..................................................................26

*Burdick v. Tonoga, Inc.*,
110 N.Y.S.3d 219, 2018 WL 3355239, (N.Y. Sup. Ct. July 3, 2018)
(table) *aff'd*, 112 N.Y.S.3d 342, 347–48 (N.Y. App. Div. 2019) ...........................36

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ..................................................................................36

*Cendant Corp. v. Forbes*,
70 F. Supp. 2d 339 (S.D.N.Y. 1999) ........................................................46

*Cmty. Refugee & Immigr. Servs. v. Registrar, Ohio Bur. of Motor
Vehicles*,
334 F.R.D. 493 (S.D. Ohio 2000) ..............................................16, 33, 37

*Cole v. City of Memphis*,
839 F.3d 530 (6th Cir. 2016) ..................................................17, 55, 56

*Craft v. Vanderbilt Univ.*,
174 F.R.D. 396 (M.D. Tenn. 1996) ..........................................................42, 47

*Day v. NLO, Inc.*,
144 F.R.D. 330 (S.D. Ohio 1992) ............................................................42, 47

*Day v. NLO, Inc.*,
811 F. Supp. 1271 (S.D. Ohio 1992) ........................................................42

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ..................................................................19

*In re Delta Airlines*,
310 F.3d 953 (6th Cir. 2002) ..................................................................15

*Doe v. DeWine*,
910 F.3d 842 (6th Cir. 2018) ..................................................................27

*Donovan v. Philip Morris USA, Inc.*,
268 F.R.D. 1 (D. Mass. 2010).............................................................29, 39

*In re DuPont C-8 Pers. Inj. Litig.*,
54 F.4th at 918–19 ...........................................................................10, 40

*In re E. I. du Pont de Nemours & Co. C-8 Personal Inj. Litigation*,
2:13-md-2433....................................................................................*passim*

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
54 F.4th 912 (6th Cir. 2022) .............................................................*passim*

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)................................................................................52

*Elliott v. Chicago Hous. Auth.*,
No. 98 C 6307, 2000 WL 263730 (N.D. Ill. Feb. 28, 2000).............................42, 47

*In re Fernald Litig.*,
C-1-85-149, 1989 WL 267039 (S.D. Ohio Sept. 29, 1989)....................................47

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3rd Cir. 2011) ...................................................................39

*German v. Fed. Home Loan Mortg. Corp.*,
885 F. Supp. 537 (S.D.N.Y. 1995) ..........................................................42, 47

*Gibbs v. E.I. DuPont De Nemours & Co.*,
876 F. Supp. 475 (W.D.N.Y. 1995) ........................................................42, 47

*Grupo Mexicano de Desarollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999)............................................................................*passim*

*Hermens v. Textiles Coated Inc.*,
Nos. 216-2017-CV-524, 216-2017-CV-525 (N.H. Super. Ct. July 30,
2019) ........................................................................................35, 36

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) ...................................................................19

*Hirsch v. CSX Transp.*,
656 F.3d 359 (6th Cir. 2011) .............................................................21, 22, 46

*Hutto v. Finney*,
437 U.S. 678 (1978)....................................................................................44

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
204 F.R.D. 330 (N.D. Ohio 2001) ..........................................................28

*Kartman v. State Farm Mut. Ins. Co.*,
634 F.3d 883 (7th Cir. 2011) ...................................................................53

*Kelly v. Metro. Cnty. Bd. of Educ. of Nashville & Davidson Cnty.,
Tenn.*,
687 F.2d 814 (6th Cir. 1982) ...................................................................44

*Leach v. E. I. du Pont de Nemours & Co.*,
No. 01-C-698 (Wood Cnty. W. Va. Cir. Ct.)....................................*passim*

*Love v. City of Port Clinton*,
524 N.E.2d 166 (Ohio 1988)....................................................................25

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)...................................................................................27

*Lyngaas v. Ag*,
992 F.3d 412 (6th Cir. 2021) ...................................................................20

*Macy v. GC Servs. Ltd. P'ship*,
897 F.3d 747 (6th Cir. 2018) .............................................................16, 19

*Maldonado v. Ochsner Clinic Found.*,
493 F.3d 521 (5th Cir. 2007) ...................................................................53

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)......................................................................56

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997) ...................................................................49

*Mental Disability Law Clinic v. Hogan*,
No. CV-06-6320, 2008 WL 4104460 (E.D.N.Y. Aug. 29, 2008) ..........56

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993)...................................................................................47

*Milliken v. Bradley*,
433 U.S. 267 (1977) ..................................................................................44

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) ....................................................................29

*In re NLO, Inc.*,
5 F.3d 154 (6th Cir. 1993) .......................................................................42

*O'Connor v. Boeing N. Am., Inc.*,
180 F.R.D. 359 (C.D. Cal. 1997) ............................................................42

*In re Oil Spill by the Oil Rig "Deepwater Horizon"*
295 F.R.D. 112 (E.D. La. 2013) ..............................................................29

*Olden v. LaFarge Corp.*,
383 F.3d 495 (6th Cir. 2004) .............................................................17, 48

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ....................................................................19

*Palombaro v. Emery Fed. Credit Union*,
No. 1:15-cv-792, 2017 WL 213071 (S.D. Ohio Jan. 17, 2017) ..............52

*Parsons v. U.S. Dep't of Just.*,
801 F.3d 701 (6th Cir. 2015) ...................................................................27

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*,
Nos. 1:95-CV-141, 1:95-CV-290, 1996 WL 739170
(W.D. Mich. Sept. 27, 1996) ...................................................................23

*Pillow Menu, LLC v. Super Effective, LLC*,
No. 20-cv-03638, 2021 WL 3726205 (D. Colo. Aug. 19, 2021) ............45

*Prantil v. Arkema Inc.*,
986 F.3d 570 (5th Cir. 2021) .............................................................53, 54

*Reid v. Donelan*,
17 F.4th 1 (1st Cir. 2021) .........................................................................37

*Rhodes v. E.I. du Pont de Nemours & Co.*,
253 F.R.D 365 (S.D. W. Va. 2008) ..........................................................32

ix

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ...................................................................56

*Romberio v. UnumProvident Corp.*,
385 F. App'x 423 (6th Cir. 2009) ...........................................................37

*In re Sch. Asbestos Litig.*,
789 F.2d 996 (3d Cir. 1986)........................................................16, 30, 31

*Scott v. Am. Tobacco Co.*,
725 So.2d 10 (La. Ct. App. 1998).............................................16, 30, 36

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ...................................................................34

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015).....................................................................55

*Shook v. Bd. of Cnty. Comm'rs*,
543 F.3d 597 (10th Cir. 2008) ...........................................38, 51, 53, 55

*Shook v. El Paso Cnty.*,
386 F.3d 963 (10th Cir. 2004) .................................................................55

*Shreve v. Franklin Cnty., Ohio*,
No. 2:10-cv-644, 2010 WL 5173162 (S.D. Ohio Dec. 14, 2010) ..........52

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................18, 20, 21

*Stanich v. Travelers Indem. Co.*,
259 F.R.D. 294 (N.D. Ohio 2009) ...........................................................22

*Sterling v. Velsicol Chem. Corp.*,
855 F.2d 1188 (6th Cir. 1988) .................................................................18

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
No. 5:16-cv-125, 2019 WL 827995 (D. Vt. Aug. 23, 2019) .............29, 35

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
No. 5:16-cv-125, 2020 WL 1329413 (D. Vt. Mar. 6, 2020) ..........*passim*

*Sutton v. St. Judge Med. S.C., Inc.*,
419 F.3d 568 (6th Cir. 2005) ............................................................*passim*

*In re Telectronics Pacing Sys., Inc.*,
172 F.R.D. 271 (S.D. Ohio 1997) .....................................................22, 29

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2200 (2021) ...........................................................................25

*United States v. Carroll*,
667 F.3d 742 (6th Cir. 2012) ...........................................................25, 26

*Vallario v. Vandehey*,
554 F.3d 1259 (10th Cir. 2009) ........................................................17, 53

*Wal-Mart-Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................38, 39

*Wilson v. Brush Wellman, Inc.*,
817 N.E.2d 59 (Ohio 2004) ..............................................16, 43, 46, 49

*Wuliger v. Mfrs. Life Ins. Co.*,
567 F.3d 787 (6th Cir. 2009) ...................................................................26

*Yaffe v. Powers*,
454 F.2d 1362 (1st Cir. 1972) ...............................................................55

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ...........................................................17, 56

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ...............................................................41

**Statutes**

28 U.S.C. § 1292 ........................................................................................1

28 U.S.C. § 1332 ........................................................................................1

28 U.S.C. § 2072 ..................................................................................48, 49

28 U.S.C. § 2201–02 ..................................................................................1

**Rules**

Fed. R. App. P. 32 ................................................................59

Fed. R. Civ. P. 23 ...........................................................*passim*

Fed. R. Civ. P. 26 ................................................................13

Fed. R. Civ. P. 65 ...................................................51, 52, 53

**Other Authorities**

1 Newberg on Class Actions § 3.01 (3d ed. 1992) ..................33

11A Charles Alan Wright, et al., Fed. Practice & Procedure § 2941
(2d ed. 1995) .........................................................................45

2 Newberg on Class Actions § 4:34 (5th ed.) .........................36

John Norton Pomeroy, A Treatise on Equity Jurisprudence §§ 59–60
(4th ed. 1918) ................................................................46, 47

Joseph Story, Commentaries on Equity Jurisprudence § 28 (Alfred
Edward Randall ed., 3d ed. 1920)........................................46

Nat'l Acads., *Guidance on PFAS Exposure, Testing, and Clinical
Follow-Up* (2022), *available at* https://tinyurl.com/58crdyv5 ...............50

Restatement (Second) of Torts § 7(1) (1965) .........................20

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Mr. Hardwick requests oral argument. This appeal does not present the purportedly "novel" and "unsettled" issues suggested by Defendants. (Dfs.' Br., Dkt.54, p.x.) But argument may help the Court answer the questions that the motions panel raised.

## STATEMENT OF JURISDICTION

Subject-matter jurisdiction for this case exists under 28 U.S.C. §§ 1332, 2201–02. (First Am. Compl., R.96, PageID#562.) On March 7, 2022, the district court granted in part Mr. Hardwick's Motion for Class Certification. (*See* Class Cert. Order, R.233, PageID#6663–6711.) A panel of this Court granted Defendants' petition to review class certification under Rule 23(f) and 28 U.S.C. § 1292(e).

# INTRODUCTION

If this case is "one of the largest class actions in history," it is only because the number of people Defendants injured is among the largest in history. Defendants admit that 99% of Americans have the chemical PFOA and at least one other chemical in the PFAS family in their blood serum.[1] Defendants admit that these toxins did not exist before they created them. Defendants knew for decades that their manufacture and release of their chemicals would result in the contamination of human blood, where it would accumulate and persist, resulting in serious, significant harm to human health. But they told no one. Instead, they covered up what they knew and hid the risks from regulators, the scientific community, and the public, while continuing to release their poison into the world. Defendants en masse contaminated nearly everyone's blood with toxic substances without their knowledge and consent. Defendants hope to get away with it by claiming that they harmed too many people for the judicial system to provide a remedy.

Defendants' trick is to ask this Court to look at this case backwards. They start at the end, trying to shock the Court with the scope of the class under Rule 23. They claim that there are just too many plaintiffs to fit into the Rule 23 paradigm.

---

[1] "PFOA" is perfluorooctanoic acid. "PFAS" stands for per- and polyfluoroalkyl substances. (*See* First Am. Compl., R.96, PageID#561.)

But no court has ruled that a defendant can harm so many people that it can avoid a class action.

The correct analysis starts with understanding the vast harm that Defendants caused as alleged by Mr. Hardwick and then determining whether that harm can be remedied through the common mechanisms of Rule 23. The district court showed that it can and should.

There is nothing unusual about what the district court did here. It certified a limited, objectively defined class of those people injured by Defendants in the same way, and not a person more. That follows this Court's precedent. The district court even left open the opportunity for the parties to brief the precise scope of the class, which is currently limited only to individuals subject to the laws of Ohio. Likewise, the district court concluded that it could award the same relief that courts in this Circuit and across the country have awarded for decades—traditional medical monitoring with accompanying scientific studies. There is nothing radical or unsettled about the district court's thorough and carefully reasoned decision.

This is not, as Defendants claim, a case requiring an analysis of "5,000 different substances." This is a case—and a class—dealing with individuals with detectable levels of only *one* chemical—PFOA—and at least *one other* chemical in the broader class of PFAS in their blood serum. The harm posed by PFOA is well-established. The medical monitoring and studies requested by Mr. Hardwick and

the class seek to confirm the additional harm posed by the mixture of PFOA and at least one other PFAS in their blood serum.

The district court saw that the Defendants are not too big to sue, and the vastness of their misconduct does not put them outside Rule 23. Given Defendants' uniform scheme, Mr. Hardwick and the class members' uniform injury, and the ability of a medical monitoring program to uniformly provide relief to the class, this case is suited to class certification and meets all the requirements of Rule 23. This Court should affirm.

## STATEMENT OF THE ISSUES

1.      Whether a person whose blood has been contaminated by a harmful, bioaccumulative and biopersistent toxic chemical has Article III standing to sue the companies that created and spread those chemicals, leading to his contamination.

2.      Whether, under Rule 23(b)(2), a class of individuals whose blood has been poisoned through the defendants' common scheme of creating and spreading a toxic chemical can pursue a form of injunctive relief well-established under state law and uniformly applicable to the entire class—traditional medical monitoring with accompanying studies.

3.      Whether, for a class certified under Rule 23(b)(2), a district court's class definition including objective criteria for determining the membership of the class needs to comply with an ascertainability requirement only applicable to classes certified under Rule 23(b)(3).

## STATEMENT OF THE CASE

The class certified by the district court focuses on *one* particular PFAS—PFOA—and the harmful, synergistic interactions between that *one* chemical and at least *one* other PFAS. Contrary to Defendants' mischaracterization, this case does not require an analysis of the entire family of PFAS chemicals.

Mr. Hardwick filed this action—which pleads claims for negligence, battery, declaratory judgment, and conspiracy and seeks traditional medical testing and monitoring as a remedy—as a case related to the multidistrict litigation *In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, 2:13-md-2433 ("C8 MDL") pending in the district court. (Class Cert. Order, R.233, PageID#6663, 6667.) The C8 MDL dealt with Defendant E. I. du Pont de Nemours and Company ("DuPont") contaminating the communities around one of its plants with PFOA. (*See id.*, PageID#6663–64.) The C8 MDL, and the litigation and events leading to that litigation, confirmed the harms posed by PFOA. Mr. Hardwick and the class now seek to confirm the synergistic and additional harms posed by PFOA when it is present in human blood with at least one other PFAS.

### A.    Defendants contaminated Mr. Hardwick and the class members with toxic, biopersistent, and bioaccumulative PFOA and other PFAS.

PFOA is part of a class of man-made chemicals (PFAS) developed in the 1930s and 1940s and put into large-scale manufacture and use by the early 1950s. (Mot. for Class Cert., R.164, PageID#1497.) Defendants knew *decades ago* that

their PFOA and at least one other PFAS (PFOS)[2] inevitably entered, accumulated, and persisted in the blood of exposed humans, where it could cause harm. (Mot. for Class Cert., R.164, PageID#1498–1501.) Yet Defendants continued to make and use PFOA and other PFAS and continued to purposefully spread those chemicals across the world, thereby inevitably contaminating Mr. Hardwick's and the class members' blood with their toxic chemicals. (*Id.*, PageID#1497–98.)

Over his lifetime, Mr. Hardwick was exposed to PFOA. He now has at least 0.05 parts per trillion ("ppt") of PFOA and 0.05 ppt or more of at least one other PFAS in his blood serum. (*Id.*, PageID#1496.) Mr. Hardwick and the class members did not know about, or consent to, their blood being contaminated with Defendants' PFOA or other PFAS.

PFOA, and other PFAS, did not enter Mr. Hardwick's or any other class members' blood through any act of nature. There is no natural background level of any PFAS. (*Id.*) Nor is there any "normal" or "acceptable" level of any PFAS in human blood. (*Id.*, PageID#1497.) Prior to its invention, manufacture, and distribution by Defendants, no PFAS was found, detected, or present in human blood. (*Id.*) Thus, the only "normal" or "natural" "background" level of any PFAS in human blood is none—zero. (*Id.*) Yet blood serum testing and analysis by Defendants, independent scientific researchers, and governmental entities has

---

[2] "PFOS" is perfluorooctanesulfonic acid.

confirmed that PFOA and other PFAS from Defendants are now present in around

99% of the population of the United States. (*Id.*)

PFOA and other PFAS are not benign additions to Mr. Hardwick's or the class

members' blood. Defendants' PFOA and other PFAS are biopersistent and

bioaccumulative, meaning they will be in the blood and bodies of Mr. Hardwick

and the class members for many years and will contaminate waterways and ground

for millennia. (*See* Class Cert. Order, R.233, PageID#6663–64.) Independent

scientists already have confirmed that the PFOA found in Mr. Hardwick's and the

class members' blood is linked with significantly increased risk of several serious

diseases, including two types of cancer. (Mot. for Class Cert., R.164,

PageID#1504–05.) Scientists are confirming that other PFAS are linked to various

diseases too. (*See id.*, PageID#1507.)

**B.    The history and results of the *Leach* class action and C8 MDL show the dangers of PFOA—and the feasibility of the relief requested here.**

It was not until litigation brought by unsuspecting victims of this secret

poisoning in the Mid-Ohio Valley that the information and risks of PFOA and

other PFAS, long-known but concealed by Defendants, began to be revealed.

As early as the 1950s, DuPont had begun discharging vast quantities of

PFOA into the Ohio River, landfills, and the air surrounding its Washington Works

plant. *In re E. I. du Pont de Nemours & Co. ("DuPont") C-8 Pers. Inj. Litig.*, 54

F.4th 912, 916 (6th Cir. 2022). Individuals living around the plant sued DuPont,

and in 2002, the West Virginia state court hearing the case certified a class seeking a common, class-wide medical monitoring program for community members exposed to the PFOA. (*See* Mot. for Class Cert., R.164, PageID#1494; *see generally Leach v. E. I. du Pont de Nemours & Co.*, No. 01-C-698 (Wood Cnty. W. Va. Cir. Ct.).) As part of a 2004 class settlement, the *Leach* court eventually approved and oversaw implementation of a common, class-wide program of blood testing and a series of extensive, epidemiological studies of the tens of thousands of class members. (Mot. for Class Cert., R.164, PageID#1494.) That program included the appointment of an independent panel of epidemiologists known as the "C8 Science Panel" and a second panel of independent medical doctors known as the "C8 Medical Panel." (*Id.*)

For seven years, the C8 Science Panel conducted some of the largest domestic epidemiological studies ever. *See In re DuPont C-8 Pers. Inj. Litig.*, 54 F.4th at 919. In 2011 and 2012, after studying data and blood samples of around 69,000 people, the C8 Science Panel publicly announced its findings that PFOA exposures had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically diagnosed high cholesterol. *Id.*; (Mot. for Class Cert., R.164, PageID#1504–05.) Under the terms of the parties' settlement agreement, DuPont expressly agreed that these "probable link" findings were the equivalent of and

fully resolved all issues of "general causation" with respect to PFOA's ability to "cause" these diseases.[3]

The C8 Science Panel effectively addressed, on a class-wide basis, the issues surrounding PFOA's ability to cause disease in impacted humans. (*See* Mot. for Class Cert., R.164, PageID#1504–05.) The independent medical doctors of the C8 Medical Panel developed and implemented a common, class-wide medical monitoring and testing program to detect those diseases among this same exposed population. (*Id.*) The C8 Medical Monitoring Program created a single, common menu of recommended medical monitoring procedures for everyone in the class of tens of thousands of *Leach* settlement class members. (Reply in Supp. of Mot. for Class Cert., R.210, PageID#6328.)

After the C8 Science Panel issued its findings, the members of the *Leach* class with linked diseases brought around 3,500 cases against DuPont. *In re DuPont C-8 Pers. Inj. Litig.*, 54 F.4th at 919. Those cases were consolidated as the C8 MDL. *Id.*

After years of litigation involving dozens of motions, including consideration of the opinions, reports, and testimony of dozens of experts on both

---

[3] Defendants' assertion that the "probable link" standard used by the C8 Science Panel purportedly has "a lower threshold than legal or scientific causation" is false, as confirmed by the language of the agreement creating that Panel, whereby DuPont agreed that the issue of "general causation" was resolved by a "probable link" finding. *See In re DuPont C-8 Pers. Inj. Litig.*, 54 F.4th at 918–19.

sides, the district court held two bellwether trials. *Id.* at 920. Concluding that DuPont caused the plaintiffs' cancer through its decades of PFOA releases, the jury found for the plaintiff in each case. *See id.* More C8 MDL cases went to trial, resulting in more jury verdicts against DuPont totaling millions of dollars in damages. *See id.* at 920–21. Although DuPont eventually agreed to pay thousands of C8 MDL plaintiffs hundreds of millions of dollars as part of several settlements, the C8 MDL remains pending and has been the subject of several appeals to this Court, which ultimately has upheld Judge Sargus's opinions. *See id.* at 921. In its most recent decision relating to the C8 MDL, stemming from the *Abbott* case, this Court affirmed Judge Sargus's holding that collateral estoppel precludes DuPont from relitigating the interpretation of the *Leach* settlement agreement and thus bars DuPont from challenging PFOA's general causation of the linked diseases. *See id.* at 917–21.

The work of the C8 Science and Medical Panels and the establishment of the C8 Medical Monitoring Program show that the medical monitoring and accompanying studies requested here can be accomplished on a class-wide basis through a single, uniform program. But unlike the C8 Medical Monitoring Program, which focused only on PFOA, the medical monitoring program requested here seeks to confirm the harmful, synergistic effects of having blood contaminated with both PFOA and at least one other PFAS.

**C.    Mr. Hardwick sues, defeats Defendants' motions to dismiss, and obtains certification of a limited, objectively defined class.**

As the work of the C8 Science Panel and other studies have shown, Defendants already have harmed Mr. Hardwick and nearly every other American by contaminating their blood with PFOA. (*See* Mot. for Class Cert., R.164, PageID#1504–05.) So in 2018, Mr. Hardwick filed this case, seeking medical monitoring and accompanying scientific studies to address the harm caused by Defendants' contamination of his blood with PFOA and to confirm the synergistic and *additional* harm he and the class have suffered from having both PFOA and at least one other PFAS in their blood.

Defendants tried to dismiss this case through multiple motions and on many grounds, including standing, jurisdiction, and constitutional issues. (Order Denying Mots. to Dismiss, R.128, PageID#841.) The district court rejected these arguments. (*See id.*, PageID#835.)

Defendants Daikin Industries, Ltd. ("Daikin") and Archroma Management L.L.C. moved the district court to reconsider its decision. (*See* Order Denying Reconsideration, R.166, PageID#4443.) The district court denied that motion. (*Id.*) Daikin petitioned for permission to appeal the denial of its personal jurisdiction arguments. (*See* Order Denying Petition to Appeal, R.206, PageID#6285.) The district court denied Daikin's petition, and in a rebuke of Daikin's briefing, the

12

district court stated that although Daikin "is entitled to contest personal jurisdiction[,] it is not entitled to distort the caselaw that applies in this case." (*Id.*)

After defeating Defendants' numerous efforts to dismiss the case, Mr. Hardwick moved for class certification. (Mot. for Class Cert., R.164, PageID#1481, 1525–26.) The parties agreed to postpone discovery on the merits of the case until after class certification. (*See* Rule 26(f) Report, R.147, PageID#1408; Preliminary Pretrial Order, R.156, PageID#1430; Class Cert. Order, R.233, PageID#6664.)

On March 7, 2022, the district court granted in part Mr. Hardwick's Motion for Class Certification. In its order, the district court noted the voluminous materials submitted by Mr. Hardwick in support of his motion, including expert studies, scientific articles and reports, and Defendants' own records. (*See id.*, PageID#6664–65, 6695, 6709–10.) The district court rejected Defendants' arguments and held that Mr. Hardwick satisfied the elements of Rule 23(a) and (b)(2). (*Id.*, PageID#6684–710.) Relying on Mr. Hardwick's evidence, and in conformity with this Court's precedent, the district court certified a limited, objectively defined class under Rule 23(b)(2):

> Individuals subject to the laws of Ohio, who have 0.05 parts per trillion (ppt) of PFOA (C-8) and at least 0.05 ppt of any other PFAS in their blood serum.

(*Id.*, PageID#6663.) The class definition is specific and identifiable. That it includes nearly every Ohioan reflects the harm Defendants caused. (*Id.*)

The district court indicated that it might expand the class. (*See id.*, PageID#6697, 6711.) But because some states might not recognize medical monitoring as a form of relief, the district court explained that it would set a briefing schedule to address those state law issues and determine the final scope of the class. (*Id.*)

As for the requested relief, the district court concluded that it had authority under Ohio law and longstanding precedent to award injunctive relief in the form of traditional medical monitoring with accompanying scientific studies. (*See id.*, PageID#6681.)

## D.   The motions panel's order misapprehends this case and the district court's class certification order.

Defendants petitioned this Court for review under Rule 23(f). *See In re 3M Co.*, No. 22-0305, 2022 WL 4149090, at *1 (6th Cir. Sept. 9, 2022). A panel of this Court granted the petition. *Id.* at *10. The motions panel's view was that this is "one of the largest class actions in history," presenting "novel" and "unsettled" questions. *Id.* at *8, *10. The issues raised by the motions panel are answered below. This is a large class action because so many people were harmed, not because of machinations of Mr. Hardwick or the class. It is novel only because likely no other set of defendants has poisoned the blood of nearly every American.

14

The motions panel's order is not binding on this Court's review of the merits. *In re Delta Airlines*, 310 F.3d 953, 960 (6th Cir. 2002). Still, Defendants often cite the non-binding order as if it were dispositive. (*E.g.*, Dfs.' Br., Dkt.54, p.1.) Defendants' citations to controlling authority are, by contrast, notably lacking.

The merits are now before this Court. And a review of the merits should lead this Court to affirm the district court's order.

## SUMMARY OF THE ARGUMENT

Mr. Hardwick has Article III standing. *See Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 752 (6th Cir. 2018). Mr. Hardwick and the class face immense health risks and suffered an injury in fact from being poisoned with Defendants' PFOA and other PFAS. *Sutton v. St. Judge Med. S.C., Inc.*, 419 F.3d 568, 570–75 (6th Cir. 2005). That poisoning is fairly traceable to Defendants, and the requested medical monitoring with accompanying studies would redress Mr. Hardwick and the class.

Defendants' scheme of creating and causing societal exposure to their toxic PFOA and other PFAS creates commonality. *See Cmty. Refugee & Immigr. Servs. v. Registrar*, *Ohio Bur. of Motor Vehicles*, 334 F.R.D. 493, 503 (S.D. Ohio 2000). The class certified by the district court tracks medical monitoring class actions certified by federal courts across many decades. *See In re Sch. Asbestos Litig.*, 789 F.2d 996, 1009–10 (3d Cir. 1986); *Scott v. Am. Tobacco Co.*, 725 So.2d 10, 13 (La. Ct. App. 1998). There is no "cohesiveness" requirement for this Rule 23(b)(2) class. But even if there were, this class meets it because the class members' uniform injury can be redressed through a medical monitoring program that is indivisible among the class.

Mr. Hardwick has requested valid injunctive relief under Rule 23(b)(2). *See, e.g.*, *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 65 (Ohio 2004). Whether

medical monitoring existed at the time of the founding does not dictate whether the district court can award that relief under state law. *See Grupo Mexicano de Desarollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 n.3 (1999). Many federal courts have concluded that they can award medical monitoring under their equitable jurisdiction. *See, e.g.*, *Olden v. LaFarge Corp.*, 383 F.3d 495, 498, 512 (6th Cir. 2004); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-cv-125, 2020 WL 1329413, at *2 (D. Vt. Mar. 6, 2020).

Mr. Hardwick has satisfied any specificity requirement. Even under Defendants' case law, the description of the requested relief need only allow the district court to "conceive of an injunction" that satisfies the relevant rules. *Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009). Mr. Hardwick has adequately described the requested relief by, among other things, identifying multiple examples of how to structure the proposed medical monitoring program.

Ascertainability is not a requirement for class certification under Rule 23(b)(2). *Cole v. City of Memphis*, 839 F.3d 530, 543 (6th Cir. 2016). But if it were, the class definition would satisfy that requirement because the definition identifies the class using objective criteria. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538–39 (6th Cir. 2012).

None of Defendants' arguments establish a basis for reversing the district court's class certification order.

# ARGUMENT

A district court's class certification order "should not be overturned absent a showing of abuse of discretion." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). The district court did not abuse its discretion.

## I.    Mr. Hardwick has Article III standing.

Mr. Hardwick meets all requirements for Article III standing: injury in fact; traceability; and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). He asserts: (1) an injury in fact (contamination of his blood and body with PFOA and at least one other PFAS); (2) traceability (Defendants manufactured PFOA and other PFAS); and (3) redressability (medical monitoring with accompanying studies would redress the harms caused by PFOA and other PFAS in Mr. Hardwick's blood).

At bottom, Defendants contend that Mr. Hardwick must wait to sue until contracting a disease from PFOA exposure. That isn't the law because, when that day comes, Defendants would assert that the statute of limitations started running when Mr. Hardwick knew he had PFOA and other PFAS in his blood (along with the increased risk of disease from that exposure). So if he does not sue now, he might never have a way to redress his injuries. Moreover, Defendants' position undermines all medical monitoring relief, which is grounded in detecting when known exposure leads to disease.

### A. Mr. Hardwick need not establish evidentiary proof for standing at the certification stage.

Defendants' standing arguments have the same flaw: Defendants incorrectly import Rule 23's evidentiary requirements into Article III's standing requirements. (*See, e.g.*, Dfs.' Br., Dkt.54, p.21.) But Mr. Hardwick need not satisfy an evidentiary burden to show standing at the class certification stage, before merits discovery.

Allegations, not record evidence, determine standing at the class certification stage. Thus, Defendants' standing challenge cannot look beyond the "four corners of the complaint." *Macy*, 897 F.3d at 752, *abrogated on other grounds by Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021); *see also In re Deepwater Horizon*, 739 F.3d 790, 802 (5th Cir. 2014).

True, "[a] plaintiff is required to establish the elements necessary to prove standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). But Defendants fail to explain why a class certification that has not proceeded to merits discovery would require evidence different from the pleadings stage. (*See* Class Cert. Order, R.233, PageID#6675); *see also Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020). Plus, even Rule 23(a)'s requirements at the class certification stage may be "plain enough from the

19

pleading," which "suggest[s] that admissible evidence is not always required." *Lyngaas v. Ag*, 992 F.3d 412, 428 (6th Cir. 2021) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

What matters here is whether the Complaint alleges enough for Article III standing. But even if evidence had to show standing, Mr. Hardwick still met his burden. (Class Cert. Order, R.233, PageID#6674–81.)[4]

### B. Harmful PFAS in Mr. Hardwick's blood show an injury in fact.

Mr. Hardwick has toxic PFOA and at least one other PFAS in his blood. These chemicals pose imminent harm to Mr. Hardwick and will linger in his body for years. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339.

A legally cognizable injury is the "invasion of the legally protected interest of another." Restatement (Second) of Torts § 7(1) (1965); *see Spokeo,* 578 U.S. at 339. Defendants putting harmful chemicals in Mr. Hardwick's blood, without his consent, invaded his legally protected interest to be free from those chemicals. The law does not require Mr. Hardwick to wait until some additional harm manifests

---

[4] Judge Sargus correctly decided, alternatively, that sufficient evidence supported Mr. Hardwick's standing. (Class Cert. Order, R.233, PageID#6675.)

before seeking injunctive relief. The accumulation of PFOA, and at least one other

PFAS, in his blood shows a concrete injury. *See Spokeo*, 578 U.S. at 340.

Contrary to Defendants' argument, Mr. Hardwick faces harm that is far from

conjectural. An increased risk of future harm, caused by another party's

interference with a plaintiff's body, shows injury in fact. This Court recognized

that principle in a case where implanting a medical device led to an elevated risk of

heart disease. *Sutton v. St. Judge Med. S.C., Inc.*, 419 F.3d 568, 570–75 (6th Cir.

2005). Even though the medical device "ha[d] not yet malfunctioned or caused

Sutton any physical injuries," there was an injury because the "device present[ed]

an increased risk of future harm." *Id.* at 575. And that injury—interference with the

plaintiff's body causing increased risk for future harmful physical manifestations—

permitted a merits argument seeking medical monitoring. *Id.*

Under *Sutton*, Mr. Hardwick's injury—an increased risk of harm caused by

PFAS in his blood and body—follows established precedent for showing injury in

fact. *See Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 525 (6th Cir. 2013)

(quoting *Hirsch v. CSX Transp.*, 656 F.3d 359, 363 (6th Cir. 2011)); *Baker v.

Saint-Gobain*, 232 F. Supp. 3d 233, 252 (N.D.N.Y. 2017). *Sutton* foreclosed

Defendants' arguments long ago.

Consider *Hirsch* as well. There, a derailed train caught fire, and "2,800 tons

of burning material were sent into the surrounding atmosphere, [producing] toxic

chemicals." *Hirsch*, 656 F.3d at 361. This Court declined to rule out the possibility that plaintiffs suffered an injury following exposure, even though the "alleged injuries consist[ed] solely of the increased risk of—and corresponding cost of screening for—certain diseases." *Id.* at 363. Instead, the Court only asked for proof of increased harm to permit a medical monitoring claim where the plaintiffs had "not suffered any discernable compensable injury." *Id.* As a result, those endangered by exposure to toxic chemicals need not wait to fall ill before seeking redress for their increased risk of harm (such as the medical monitoring contemplated in *Hirsch*). They must only, at some point, substantiate the increased risk with evidence.[5] Like those injured in *Hirsch*, Mr. Hardwick has been exposed to a known toxic substance, and has identified the responsible parties. Thus, *Hirsch* supports Mr. Hardwick receiving the same relief for the same injury at issue there.

Deflecting this precedent, Defendants assemble snippets from Mr. Hardwick's deposition to make it appear that he is suing over an unknown risk of a potential future injury. Defendants' nitpicking of the language used by Mr. Hardwick impermissibly seeks to amend Mr. Hardwick's formal pleadings and legal arguments through Mr. Hardwick's lay testimony. *See Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 317 (N.D. Ohio 2009); *In re Telectronics Pacing Sys.,*

---

[5] This Court considered *Hirsch* at the summary judgment stage. The burden to establish factual support there is irrelevant to this class certification, for which no merits discovery has occurred.

*Inc.*, 172 F.R.D. 271, 282 (S.D. Ohio 1997); *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, Nos. 1:95-CV-141, 1:95-CV-290, 1996 WL 739170, at *8 (W.D. Mich. Sept. 27, 1996).

Moreover, Defendants incorrectly rely on Mr. Hardwick's testimony to attack standing. Mr. Hardwick is not an expert witness. His views on injury, in terms of science and law, would be irrelevant. And there is no rule that a plaintiff's testimony on causation, injury, or scientific fact must decide a case.

Further, contrary to Defendants' claim, no excerpt shows Mr. Hardwick answering the question of what he considered his injury to be. (Dfs.' Br., Dkt.54, p.20–22.) Defendants never asked. (*See generally* Hardwick Dep., R.200-6.) At bottom, Defendants offer excerpts from Mr. Hardwick's deposition to distract from (1) this Court's conclusion that standing exists in cases like Mr. Hardwick's, *see Sutton*, 419 F.3d at 570–75, and (2) the mountain of science showing that Mr. Hardwick faces imminent harm from the PFOA and other PFAS in his blood. (*See* Mot. for Class Cert., R.164, PageID#1496–1514.)

Thus, it is Defendants who have "tried to reframe [Mr. Hardwick's] injury." (Dfs.' Br., Dkt.54, p.22). Defendants struggle to bury the fact that Mr. Hardwick's injury, the unwanted presence of PFOA and at least one other PFAS in his blood, has remained the same since he sued. (*See, e.g.*, First Am. Compl., R.96, PageID#562, 567, 574, 590; Combined Mem. in Opp. to Mots. to Dismiss, R.94,

PageID#514; *see also* Pl.'s Revised Resp. to Interrog. 1 of AGC Chemicals Americas, Inc.'s First Set of Interrogs., R.200-17, PageID#5600–01.) That is injury under *Sutton*.

Finally, Defendants attempt to minimize Mr. Hardwick's injury as the "'mere presence' of a substance unknown to cause injury." (Dfs.' Br., Dkt.54, p.22.) But the harm here is serious and proven, as the C8 Science Panel and C8 MDL have established. Mr. Hardwick alleged much more harm beyond the mere presence of unidentified chemicals with unknown risks in his blood. (First Am. Compl., R.96, PageID#571, 567, 573, 574 (describing scientific research and tests showing a "probable link" between PFOA contamination and serious disease, including various cancers).) Mr. Hardwick asserted that at least PFOA (with its known, proven health harms and risks) contaminates his blood, along with at least one other PFAS (such as PFOS). (*Id.*, PageID#574, 581, 583.) This is not a case in which "people inhale or ingest trace amounts of all sorts of substances released into the environment by others." (Dfs.' Br., Dkt.54, p.24.) Nor does it require analogy to "common-law battery." (*Id.*)

Defendants argue that Mr. Hardwick's claims are the same as cases for money damages where bodily injury occurred following a police officer's improper handcuffing procedures, or where a company undertook nuisance credit checks. (*Id.* (citing *Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988);

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2200, 2204 (2021)).) The long-term health risks following exposure to PFOA and other PFAS—which entered Mr. Hardwick's blood without his knowledge or consent—are nothing like the injuries caused in *Love* or *TransUnion*.

### C. Mr. Hardwick's injury is fairly traceable to Defendants.

PFOA does not occur in nature; Defendants are the ones who "developed, manufactured, [and] released" it. (Class Cert. Order, R.233, PageID#6678.) Thus, the PFOA detected in Mr. Hardwick's blood is a "direct and proximate result of the acts and/or omissions of Defendants." (First Am. Compl., R.96, PageID#574.)

Defendants deflect from their role in developing and spreading PFOA and other PFAS. They try to concoct some mystery over who caused Mr. Hardwick's exposure to those chemicals. (Dfs.' Br., Dkt.54, p.26.) But this is not a chain of custody case; Mr. Hardwick's claims do not turn on the details of which downstream "third-party actors" (all of whom presumably would be Defendants' "customers") handled or used the PFOA or other PFAS that were initially created and pushed into the world by Defendants. Defendants invoke *United States v. Carroll*, 667 F.3d 742 (6th Cir. 2012), trying to impute liability to "actors not before the court." (Dfs.' Br., Dkt.54, p.26.) In *Carroll*, the plaintiff identified the wrong entity to sue. Although the government "sued a group of bankruptcy

trustees," the "harm suffered" did not "flow[]" from the "trustees' actions," but arose "from the bankruptcy court's orders." 66 F.3d at 745.

Unlike *Carroll*, nothing here suggests another actor, besides Defendants, caused Mr. Hardwick's injury. The district court rightly found *Carroll* inapt, finding no mismatch between Mr. Hardwick's harm and acts caused by Defendants. For example, there are no "regulators who approved Defendants' manufacture of PFAS," and Defendants do not "hold a middle-man position" carrying out the "direction of other parties." (Class Cert. Order, R.233, PageID#6679.) In sum, Defendants do not contest that they "engage[d] in the complained of conduct" that caused PFOA and at least one other PFAS to infiltrate Mr. Hardwick's blood. (*Id.*, PageID#6678.) That ends the traceability analysis.

Mr. Hardwick has identified the main manufacturers of PFOA responsible for creating and releasing PFOA (and other PFAS). (*See* Mot. for Class Cert., R.164, PageID#1497–98.) At this stage, Mr. Hardwick bears no burden of proving Defendants actually caused his injuries in order to show traceability. *Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020). All Mr. Hardwick must do is allege "a fairly traceable connection between [his] injury and the complained-of conduct of the [D]efendant[s]." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787,

796 (6th Cir. 2009). He did just that. (*See* Mot. for Class Cert., R.164, PageID#1496–1507.)[6]

### D. The requested injunctive relief redresses Mr. Hardwick's injury.

Mr. Hardwick's injury, the unwanted presence of PFOA and other PFAS in his blood, is redressable because it is "'likely,' as opposed to merely 'speculative,' that [his] injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). Defendants claim that the requested medical monitoring and studies would not provide relief for anyone already contaminated with PFAS. (Dfs.' Br., Dkt.54, p.27–28.) That is, Defendants believe this case could only go forward with a remedy that removes PFAS from Mr. Hardwick's body. That is not the standard.

Redressability does not require a complete and perfect remedy. *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 715 (6th Cir. 2015); *Doe v. DeWine*, 910 F.3d 842, 850–51 (6th Cir. 2018). Mr. Hardwick "need not show that a favorable decision will relieve his *every* injury." *Id.* The meaningful relief sought by Mr. Hardwick is clear—medical monitoring and studies will confirm the adverse

---

[6] Defendants suggest that this case involves "'concern[] and fear[]' about the 'unknown.'" (Dfs.' Br., Dkt.54, p.27.) This is not a claimed injury, and the only "unknown" mentioned in the First Amended Complaint is the "precise number of class members." (First Am. Compl., R.96, PageID#581.) Mr. Hardwick is concerned and fearful about the "effects of having PFAS in [his] blood," because PFOA and other PFAS cause increased risk for disease. (*Id.*, PageID#579.)

effects from PFOA and at least one other PFAS combining in human blood. (*See* First Am. Compl., R.96, PageID#573, 579.) Mr. Hardwick knows he has been poisoned by PFAS, and learning more about his prognosis going forward (and the specific harm caused by that poisoning) will offer him and the class meaningful relief. *See Sutton*, 419 F.3d at 575. Such relief is "not new to this Court." (Class Cert. Order, R.233, PageID#6681 (citing *In re Fernald Litig.*, C-1-85-149, 1989 WL 267039, at *1 (S.D. Ohio Sept. 29, 1989)).)

Adopting Defendants' reasoning requires finding that medical monitoring and similar injunctive relief cannot redress injuries caused by exposure to toxic substances. Defendants make two related claims: (1) medical monitoring would not "fix" Mr. Hardwick's body being contaminated by PFAS and (2) medical monitoring is "unavailable" as a remedy. (Dfs.' Br., Dkt.54, p.28.) But Defendants fail to square their arguments with the many medical monitoring lawsuits in which federal courts have found standing. *See, e.g.*, *Sutton*, 419 F.3d at 575; *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 349 (N.D. Ohio 2001) ("establishment of a court-supervised program" for "periodic medical examinations" "is a 'paradigmatic request for injunctive relief.'" (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 132 (3rd Cir. 1998))). Nothing in Article III requires Mr. Hardwick to develop a serious disease before seeking injunctive relief.

## II.    Mr. Hardwick meets the Rule 23 class requirements.

Defendants assert that class actions seeking medical monitoring have no basis in precedent and threaten the fabric of class action litigation. Not so. Federal courts have granted class certification for medical monitoring classes in many contexts. *See, e.g.*, *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-cv-125, 2019 WL 827995, at *3, *18 (D. Vt. Aug. 23, 2019); *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 420 (3d Cir. 2016); *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* 295 F.R.D. 112, 161 (E.D. La. 2013); *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 5, 8 (D. Mass. 2010); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. at 278. This Court should not entertain Defendants' attack on a decades-established remedy.

The limited class certified here concerns "individuals subject to the laws of Ohio"; the full scope and nature of the class certification is yet to be determined. (Class Cert. Order, R.233, PageID#6697, 6710.) Defendants mischaracterize the class as outside Rule 23(b)(2)'s ambit. Not so. The class consists of those whom Defendants harmed; that Defendants harmed many people does not excuse them from the rules that govern every other party. Even so, the district court's order is narrow and conservative—limited to injured persons subject to one state's law.

Defendants make two challenges to the certified class: (1) lack of commonality under Rule 23(a)(2) and (2) lack of cohesion under Rule 23(b)(2).

(Dfs.' Br., Dkt.54, p.30–43.) Both arguments raise the same question: whether the class claims are "individualized in a way that thoroughly precludes class certification." (*Id.* at 43.) The answer for both is no.

### A. The certified class satisfies Rule 23(a)'s commonality requirement.

Defendants assert that "even if only commonality were required," this class action would fail. (Dfs.' Br., Dkt.54, p.31.) Defendants claim that common questions about the harm of PFAS exposure "cannot be *answered* commonly" across the class because "the answer would hinge on a host of individualized inquiries." (*Id.* at 36.) That position defies both logic and law.

### 1. Defendants' allegedly individualized inquiries miss the mark.

Imagine that a train carrying toxic chemicals derailed and spilled into the Ohio River, releasing hazardous chemicals darkening the water, ground, and sky. Would there be any dispute over whether those chemicals' basic ability to cause deadly effects could be answered in common for everyone? Certainly not— everyone afflicted suffers the same harm and seeks the same common answers.

The landmark asbestos and tobacco class actions confirm that principle for large class actions. *See In re Sch. Asbestos Litig.*, 789 F.2d at 1009–10; *Scott*, 725 So.2d at 13. This case turns on the common-sense conclusion that a group

poisoned by the same chemicals, created and dispersed by the same parties, can raise common questions and receive common relief.

Much of Defendants' argument about causation and injury, offered to dispute commonality, boils down to "this stuff really isn't bad." (*See* Dfs.' Br., Dkt.54, p.37–40.) Besides being premature and factually inaccurate, *e.g.*, *In re DuPont C-8 Pers. Inj. Litig.*, 54 F.4th at 917–21, 925, Defendants press the very argument rejected in the cigarette and asbestos litigation. As the Third Circuit put it, "[a]scertaining the danger point" of when asbestos is harmful was a critical class-wide determination. *In re Sch. Asbestos Litig.*, 789 F.3d at 1009–10. Mr. Hardwick raises a similar issue—that having PFOA and at least one other PFAS in human blood is an unacceptable hazard. The answer to that question applies equally to every class member.

Defendants cite cases challenging commonality. (*See* Dfs.' Br., Dkt.54, p.38–39.) Those cases confirm that this case lacks individualized inquiries precluding class relief. To start, this case does not involve "several categories of class members" that are "not aligned," such as the "currently injured" and "exposure-only" classifications in the asbestos context. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 595 (1997); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004) ("multiple Defendants with presumably differing liability levels" created commonality issue). All class members here have the same

threshold of PFOA and at least one other PFAS in their blood and seek the same medical monitoring relief. So there is no "disparity" between a segment of class members whose "goal tugs" against the rest. *Amchem*, 521 U.S. at 595.

The cases Defendants cite do not rule out commonality for medical monitoring class actions. For example, a district court that denied certification for a medical monitoring class for PFOA exposure left open medical monitoring claims when class members assert a "plausible common method of proving their medical monitoring claim on a class-wide basis." *Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D 365, 374 (S.D. W. Va. 2008) (predating the findings of the C8 Science Panel). To that point, this Court recently found that negligence claims based on DuPont's manufacturing, dispersing, and handling of PFOA "turn on *DuPont's* conduct, not the particulars of [the plaintiff's] circumstances. … The key concept applicable here is that DuPont's conduct *impacted the Plaintiffs in virtually identical ways—contamination of their water supplies with a carcinogen*." *In re DuPont C-8 Pers. Inj. Litig.*, 54 F.4th at 925 (emphasis added). Because this Court recently held that essentially the same conduct at issue does not turn on class members' individual circumstances, Defendants cannot seriously contend that this action involves individualized questions.

### 2. Rule 23(a)'s commonality requirement is satisfied.

A plaintiff meets Rule 23(a)'s commonality requirement if there "are

questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The

commonality requirement, however, "is qualitative rather that quantitative, that is,

there need be only a single issue common to all members of the class." *In re Am.*

*Med. Sys.*, *Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1995) (quoting 1 Newberg on Class

Actions § 3.01 (3d ed. 1992)). And establishing commonality does not require

linking specific acts and specific class members.

Instead, "the commonality requirement will be satisfied as long as the

members of the class have allegedly been affected by a general policy of the

[d]efendant and the general policy is the focus of the litigation." *Cmty. Refugee*,

334 F.R.D. at 503 (quoting *Bovee v. Coopers & Lyband*, 216 F.R.D. 596, 608 (S.D.

Ohio 2003)). So plaintiffs "need not show that all class members have been injured

in precisely the same way or were in fact injured at all." *Id.* (citing *Rikos v. Procter*

*& Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015)); *see Bovee*, 216 F.R.D. at 608.

Rule 23(a) commonality focuses on Defendants' conduct—not the class

members' individual characteristics. A common question, then, is "one that is

'capable of class wide resolution—which means determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one

stroke.'" *Cmty. Refugee*, 334 F.R.D. at 504 (quoting *Wal-Mart-Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011)). Commonality requires the plaintiff to simply

"enumerate questions of law or fact common to the class" that, when answered,

"will advance the litigation." *Bovee*, 216 F.R.D. at 608 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).

Mr. Hardwick raises common legal and factual questions. *See id.* at 608–09; (First Am. Compl., R.96, PageID#582–83.)[7] As observed below, the "Court need not engage in any individual determination as to the reasons why each individual class member was treated a particular way," meaning the class raises "common questions" and "common answers." (*See* Class Cert. Order, R.233, PageID#6693.) Those common questions and answers will require the same evidence and include whether Defendants knew "PFOA was unreasonably dangerous" or that their actions "were likely to result in PFOA contaminating Americans' blood." (*Id.*, PageID#6694 (quoting Mot. for Class Cert., R.164, PageID#39–40).) As the district court stated, the answers to many common questions will turn on consideration of the defense experts' opinions weighed against Mr. Hardwick's "evidence of Congressional Hearing transcripts and documents, governmental agency studies, private chemical industry/economic development groups' studies … and expert reports … that opine on the harmful effects of PFOA and other PFAS." (*Id.*, PageID#6695.) Weighing this evidence will produce a common

---

[7] In addition, Mr. Hardwick alleges an industry-wide conspiracy among Defendants. (First Am. Compl., R.96, PageID#588–89.) That allegation satisfies commonality. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).

answer to the common question: to what extent does PFOA combined with at least

one other PFAS in human blood injure the class? (*Id.*) The record below

establishes that this class action has commonality.

Cases outside this Circuit confirm commonality here. For example, in

*Sullivan*, the district court certified two classes relating to PFAS exposure:

plaintiffs with property damage and plaintiffs with identifiable levels of PFAS in

their blood. 2019 WL 827299, at *6. There, class-wide adjudication was

appropriate because "[t]he common *answers* to questions of liability" about the

defendants' use of PFOA would apply to all plaintiffs. *Id.* at *5–6. The same result

happened in *Hermens v. Textiles Coated Inc.*, Nos. 216-2017-CV-524, 216-2017-

CV-525 (N.H. Super. Ct. July 30, 2019), R.164-1. *Hermens* certified the same two

classes as *Sullivan*—a property damage class and a medical monitoring class—and

explained that common questions and answers about the medical monitoring

claims applied for the entire class, such as whether exposure to PFOA increases

certain health risks. *Id.*, 15–16, PageID#1582–83.

Many other courts, including the Second Circuit, support the reasoning in

*Sullivan* and *Hermens*. In *Benoit v. Saint-Gobain Performance Plastics, Corp.*, for

example, the Second Circuit recognized that medical monitoring was an available

remedy for a proposed class of plaintiffs, called "Accumulation Plaintiffs," whose

alleged injury was that they "have accumulated levels of PFOA in their blood."

959 F.3d 491, 501 (2d Cir. 2020). And in *Burdick v. Tonoga, Inc.*, the New York court certified what it called a "body invasion class" of plaintiffs, all of whom had elevated PFOA accumulation in their blood. 110 N.Y.S.3d 219, 2018 WL 3355239, at *10, *13 (N.Y. Sup. Ct. July 3, 2018) (table), *aff'd*, 112 N.Y.S.3d 342, 347–48 (N.Y. App. Div. 2019).

These cases show commonality for the class. Mr. Hardwick asks this Court to answer the same general causation and liability questions that supported class certification in both *Sullivan* and *Hermens*. (First Am. Compl., R.96, PageID#582–83.) And Mr. Hardwick asks for the same type of uniform medical monitoring relief applied across the entire class. (*Id.*, PageID#590–91.)

Running through Defendants' argument is the assumption that because there are so many class members, individual questions must arise. Restated, if everyone is poisoned, then no one can sue. (*See, e.g.*, Dfs.' Br., Dkt.54, p.36.) But class actions are not bound by scale. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Scott*, 725 So.2d at 15. Defendants cannot escape liability by creating so vast a problem that a class action becomes unavailable on commonality grounds.

## B. Rule 23(b)(2) has no cohesion requirement.

### 1. Neither text nor precedent recognizes "cohesiveness."

Defendants urge this Court to adopt a "cohesiveness" requirement for Rule 23(b)(2). That position lacks any textual basis. *See* 2 Newberg on Class Actions

§ 4:34 (5th ed.). The sole mention of cohesion in Rule 23 comes in the Advisory Committee Notes, which only reference cohesion when discussing Rule 23(b)(3).

No binding precedent requires a "cohesiveness" showing under Rule 23(b)(2). Many cases from within the Sixth Circuit have certified Rule 23(b)(2) classes without ever mentioning "cohesiveness." *See, e.g.*, *Cmty. Refugee*, 334 F.R.D. at 506–07; *Allen v. Leis*, 204 F.R.D. 401, 408–09 (S.D. Ohio 2001). Only one unpublished case recognizes "cohesiveness." *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 424, 432–33 (6th Cir. 2009).[8] Defendants' "cohesiveness" theory follows no binding authority.

## 2. This class action satisfies any "cohesiveness" requirement.

Defendants complain that the district court refused to hold this class action to a cohesion standard "at least as stringent as (b)(3) predominance (which requires that common issues predominate over individual ones)." (Dfs.' Br., Dkt.54, p.33.) The motions panel also discussed cohesion. *In re 3M Co.*, 2022 WL 4149090, at *7–8. But it is unclear what standard, exactly, Defendants wish to apply for cohesiveness.

---

[8] This is the wrong case to transform an unpublished opinion into a sea-change for Rule 23(b)(2) class actions in this Circuit. This suit is unusual in scope and kind—it focuses on Defendants' conduct in manufacturing toxic chemicals and then poisoning essentially everyone in the country with them. There could not be a class action less concerned with the individualized conduct on which cohesion turns. *See Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir. 2021).

Rule 23(b)(2)'s text provides some guidance—it allows class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008) (quoting Fed. R. Civ. P. 23(b)(2)). That language "imposes two independent but related requirements": (1) "defendants' actions or inactions must be based on grounds generally applicable to all class members," and (2) "final injunctive relief [must] be appropriate for *the class as a whole.*" *Id.* In *Shook*, a case Defendants rely on, then-Judge Gorsuch described those requirements as "a certain cohesiveness" without much elaboration. *Id.* But *Shook*'s relevance ends there. *Shook* involved a proposed class seeking injunctive relief distinguishing between individual class members; the proposed class sought different, ill-defined rules for inmates with mental illnesses. *Id.* at 605. But Mr. Hardwick's tort claims seek relief in the form of traditional medical monitoring and studies that would not depend on individual characteristics. That relief provides the same common menu of services to all class members, just like the existing C8 Medical Monitoring Program.

Other cases purporting to impose a cohesiveness requirement also fail to explain, exactly, how cohesion imposes a more stringent bar on individualized questions than Rule 23(a) commonality. *Dukes* does not compare Rule 23(b)(2)

requirements to Rule 23(a). Instead, it focuses on the "the indivisible nature of the injunctive or declaratory remedy warranted," which must apply to "all of the class members." 564 U.S. at 360. The Court in *Dukes* did not foist Rule 23(b)(3)'s predominance onto Rule 23(b)(2) classes. It expressly declined to do so. *Id*.

*Dukes* addressed whether Rule 23(b)(2) permits injunctive relief when class members would be "entitled to a *different* injunction" or an "individualized award of monetary damages." *Id.* at 360–61. So *Dukes* does not clarify what a cohesion requirement would be—instead, it merely bars the "combination of individualized and classwide relief in a (b)(2) class." *Id.* at 361. In short, some courts have referred to Rule 23(b)(2)'s requirements as involving cohesion, but the definition of cohesion remains elusive. *See, e.g.*, *Barnes* 161 F.3d at 142.

Even if there is a meaningful, standalone cohesion requirement, it is satisfied here. At most, cohesion requires showing an "indivisible nature of the injunctive or declaratory remedy" and that the class does not contain "disparate factual circumstances of class members." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3rd Cir. 2011). And here, any differences between individual class members would have no impact on the structure of the requested medical monitoring program. *See Donovan*, 268 F.R.D. at 28–29 (granting in part class certification because "plaintiffs share common questions" such that a "medical monitoring cause of action may be proven on a class-wide basis" without

any "individualized determinations since class members will not receive individual awards"). The relief would be indivisible among the class because all class members would have access to the same medical monitoring options, just as what occurred with the C8 Medical Monitoring Program. No class members would be dropped when the remedy is applied to the class because of individual circumstances. Because the injury and remedy here are homogenous, the class would satisfy any possible cohesion test.

Defendants claim that Mr. Hardwick must prove now causation, injury, and other merits issues under Defendants' amorphous cohesion standard. (*See, e.g.*, Dfs.' Br., Dkt.54, p.37–43.) But we are not at the merits stage and have undertaken no merits discovery. This suit involves no individualized inquiries and pursues a remedy applying equally to all class members. The district court did not err in certifying the class.

## III.   Mr. Hardwick has requested valid injunctive relief under Rule 23(b)(2).

The district court properly concluded that it could award as injunctive relief traditional medical monitoring with accompanying scientific studies. (Order Denying Mots. to Dismiss, R.128, PageID#851–55.) That form of relief has been available under Ohio law, and awarded by federal courts, for decades. Indeed, this is the exact type of relief that DuPont agreed to in *Leach*. *In re DuPont C-8 Pers. Inj. Litig.*, 54 F.4th at 918–19. The district court did not err in concluding that it

can award that well-established form of relief here.

### A. Medical monitoring with accompanying scientific studies is injunctive relief.

Defendants present this Court with an invented description of Mr. Hardwick's requested relief. (Dfs.' Br., Dkt.54, p.44.) They try to reframe this case as an action for damages. (*See id.*) It is not. Mr. Hardwick has repeatedly explained that he and the class only seek equitable and injunctive relief. (*E.g.*, First Am. Compl., R.96, PageID#590.) Neither Mr. Hardwick nor the class is seeking any damages in this case, (*id.*), a fact that the district court recognized as it rejected Defendants' mischaracterizations, (Class Cert. Order, R.233, PageID#6671, 6674 n.3, 6682, 6687, 6708–09).

Despite these facts, Defendants argue that Mr. Hardwick seeks damages because his requested medical monitoring program with accompanying scientific studies would cost money to implement. (Dfs.' Br., Dkt.54, p.44.) The motions panel raised a similar issue. *In re 3M Co.*, 2022 WL 4149090, at *5 n.3. But that medical monitoring and studies cost money does not transform them into damages.

Not all requests for medical monitoring relief are the same. Medical monitoring generally becomes a request for monetary relief, rather than injunctive relief, only when the requested relief includes elements such as payments for treatment or damages or the establishment of a fund for the payment of past or future damages. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1196 (9th

Cir. 2001); *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 378–79 (C.D. Cal. 1997); *Day v. NLO, Inc.*, 144 F.R.D. 330, 335 (S.D. Ohio 1992). Mr. Hardwick has not requested that relief, nor has the district court ordered it.

By contrast, when plaintiffs request the establishment of a court-supervised medical monitoring program in which plaintiffs are monitored by physicians and medical data is used for group studies, courts have consistently held that this type of medical monitoring relief is injunctive, not monetary. *Day*, 144 F.R.D. at 336; *see, e.g.*, *Day v. NLO, Inc.*, 811 F. Supp. 1271, 1275 (S.D. Ohio 1992); *Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F. Supp. 475, 481–82 (W.D.N.Y. 1995).[9] And although this Court has not explicitly decided when medical monitoring relief is injunctive, it explained years ago that the case law "generally support[s] the proposition that [medical monitoring] relief is injunctive in nature." *In re NLO, Inc.*, 5 F.3d 154, 159 (6th Cir. 1993).

Consistent with this authority, the Ohio Supreme Court has established a bright-line rule for whether medical monitoring relief sought under Ohio law is

---

[9] Even when the medical monitoring program does not necessarily include studies, courts consistently hold that a court-supervised medical monitoring program is a form of injunctive relief. *See, e.g.*, *Elliott v. Chicago Hous. Auth.*, No. 98 C 6307, 2000 WL 263730, at *15 (N.D. Ill. Feb. 28, 2000); *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 406–07 (M.D. Tenn. 1996); *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 559–60 (S.D.N.Y. 1995); *Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193, 203, 205 (N.D. Cal. 1987); *see also Sullivan*, 2020 WL 1329413, at *2 ("Rule 23(b)(2) is the accepted vehicle for managing medical monitoring claims.").

injunctive, rather than monetary. *Wilson*, 817 N.E.2d at 65. Medical monitoring relief is injunctive when, as here, it involves the supervision and participation of the court. *Id.*

The court-supervised medical monitoring program and accompanying studies that Mr. Hardwick and the class seek fall squarely within the category of programs that courts, including the Ohio Supreme Court, have found to constitute injunctive relief. (*See* First Am. Compl., R.96, PageID#590–91.) Nor does the medical monitoring relief that Mr. Hardwick and the class seek include any of the elements that courts have typically found to reflect monetary relief. (*See id.*) Mr. Hardwick and the class seek injunctive relief, not monetary relief, and the district court therefore properly certified the class under Rule 23(b)(2).

### B. The district court can order medical monitoring with accompanying studies as a form of injunctive relief.

Mr. Hardwick invoked the district court's equitable jurisdiction by pleading "traditional tort claims and seek[ing] medical testing and monitoring as a remedy." (Order Denying Mots. to Dismiss, R.128, PageID#851.) And as the district court explained, "[o]nce invoked, the scope of [the] court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." (*Id.*, PageID#851–52 (quoting *Milliken v. Bradley,* 433 U.S. 267, 281 (1977).)

The Supreme Court has reiterated this expansive understanding of the traditional principles guiding a federal court's exercise of its equity jurisdiction. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 538 (2011). "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." *Milliken*, 433 U.S. at 288. In other words, rather than being bound by a set of prescribed remedies, courts operating in equity have the flexibility to adjust to the needs of a particular case and to craft an appropriate remedy. *See Brown*, 563 U.S. at 538; *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978).

Federal courts regularly use their equitable authority to craft practical injunctive relief aimed at remediating specific problems. There are countless examples of courts crafting forms of equitable relief that likely did not exist at the time of the founding. *See, e.g.*, *Kelly v. Metro. Cnty. Bd. of Educ. of Nashville & Davidson Cnty., Tenn.,* 687 F.2d 814, 818–19 (6th Cir. 1982).

Despite this precedent, Defendants and amici make the radical argument that federal courts lack authority to award medical monitoring relief because that exact form of relief might not have existed when the United States was founded. (Dfs.' Br., Dkt.54, p.45 (citing *Grupo Mexicano*, 527 U.S. 308).) Defendants' argument, however, has no application to this diversity case involving a request for injunctive relief under Ohio law. And even if Defendants' argument had any relevance here,

it contradicts Supreme Court precedent governing federal courts' equitable jurisdiction and decades of courts holding that medical monitoring is a proper form of injunctive relief.

Defendants and amici rely primarily on *Grupo Mexicano*, in which the Supreme Court held that a district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." 527 U.S. at 333. In arriving at that holding, the Supreme Court reiterated that the general availability of injunctive relief is rooted in "traditional principles of equity jurisdiction." *Id.* at 319 (quoting 11A Charles Alan Wright, et al., Fed. Practice & Procedure § 2941, p. 31 (2d ed. 1995)). *Grupo Mexicano*, however, involved the district court's authority to issue a prejudgment asset preservation injunction under federal law. *Id.* at 318 & n.3. And the Supreme Court clarified that it was not deciding the authority of federal courts to order injunctive relief under state law. *Id.* at 318 n.3. *Grupo Mexicano* is applied narrowly. *See Pillow Menu, LLC v. Super Effective, LLC*, No. 20-cv-03638, 2021 WL 3726205, at *17 (D. Colo. Aug. 19, 2021).

Defendants' arguments fail because this case, unlike *Grupo Mexicano*, involves the application of state law. (*See* First Am. Compl., R.96, PageID#562.) Under Ohio law, which applies here, *see Anderson v. Wade*, 33 F. App'x 750, 755

(6th Cir. 2002), a court-supervised medical monitoring program is an expressly permitted form of injunctive relief. *Wilson*, 817 N.E.2d at 65; *see also Hirsch*, 656 F.3d at 361, 363. *Grupo Mexicano*, and the broader notion that a federal court may award only such equitable relief as was historically available in courts of equity at the time of the founding, is inapplicable to a diversity case, like this one, in which state law explicitly provides for the requested injunctive relief. *See* 527 U.S. at 318 n.3; *Cendant Corp. v. Forbes*, 70 F. Supp. 2d 339, 344 (S.D.N.Y. 1999).

But even if the district court here is limited to awarding equitable relief rooted in "traditional principles of equity jurisdiction," *Grupo Mexicano*, 527 U.S. at 318, the district court would not err in awarding the injunctive relief that Mr. Hardwick and the class have requested.

As Justice Story explained many years ago, "one of the most striking and distinctive features of courts of equity [in England] was, that they could adapt their decrees to all the varieties of circumstances, which might arise, and adjust them to all the peculiar rights of all the parties in interest." Joseph Story, Commentaries on Equity Jurisprudence § 28 (Alfred Edward Randall ed., 3d ed. 1920). Other scholars have echoed this understanding that at the time of the founding, one of the defining principles of equity was its flexibility and expansiveness. John Norton Pomeroy, A Treatise on Equity Jurisprudence §§ 59–60 (4th ed. 1918).

Injunctions are a form of traditional equitable relief. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *Alexander v. Bosch Auto. Sys., Inc.*, 232 F. App'x 491, 496 (6th Cir. 2007); *see also* Pomeroy, A Treatise on Equity Jurisprudence § 110. The formation of certain trusts to address a defendant's wrongdoing is also a traditional form of equitable relief. Pomeroy, A Treatise on Equity Jurisprudence §§ 151, 155. And the relief requested here—an injunction establishing a court-supervised program of medical testing and monitoring— adheres to the traditional principles and practices of equity jurisprudence.

*Grupo Mexicano* does not alter this conclusion. That case says nothing about medical monitoring or whether a federal court can award medical monitoring under its equitable jurisdiction. Defendants fail to identify any case in which a federal court has held that it lacks authority to award medical monitoring because that precise form of relief might not have existed at the time of the founding.

Rather, for decades—both before and after *Grupo Mexicano*—courts in this Circuit and across the country have concluded that the establishment of a medical monitoring program is a form of injunctive relief that they can order. *See, e.g.*, *Sullivan*, 2020 WL 1329413, at *2; *Elliott*, 2000 WL 263730, at *15; *Craft*, 174 F.R.D. at 406–07; *Gibbs*, 876 F. Supp. at 481–82; *German*, 885 F. Supp. at 559– 60; *Day*, 144 F.R.D. at 336; *In re Fernald Litig.*, 1989 WL 267039, at *10–11; *Barth*, 661 F. Supp. at 203, 205. Courts have certified classes to pursue medical

monitoring in cases involving exposure to PFAS. *E.g.*, *Sullivan*, 2019 WL 8272995, at *3, *18. And the Second Circuit recently confirmed that a proposed class can proceed with class-wide medical monitoring claims because the defendants' actions caused PFOA accumulation in the prospective class members' blood. *Benoit*, 959 F.3d at 494, 496, 501–02.

Likewise, since *Grupo Mexicano* was decided, this Court has held that an increased risk of future harm requiring medical monitoring can be an adequate injury to confer standing. *Sutton*, 419 F.3d at 574–75. This Court has also affirmed the certification of a class seeking the establishment of a medical monitoring program. *Olden*, 383 F.3d at 498, 512.

Defendants' actions caused PFOA and other PFAS to invade Mr. Hardwick's and the class members' blood. The traditional principles of equity jurisdiction allow the district court to award medical monitoring with accompanying studies to redress that harm.

### C. The Rules Enabling Act does not prohibit the requested relief.

Defendants spend one sentence suggesting, without support, that the requested relief is improper because it purportedly "runs afoul" of the Rules Enabling Act, 28 U.S.C. § 2072. (Dfs.' Br., Dkt.54, p.47.) Defendants' failure to provide any detail about this presumed argument is reason enough for this Court to

48

reject it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).[10]

## IV.    Mr. Hardwick has adequately described the requested injunctive relief.

Mr. Hardwick described the injunctive relief he is seeking. He provided the

district court with several examples, including the C8 Medical Monitoring Program

and the C8 Science Panel, of how that relief can be structured and implemented.

Pointing to the studies presented by Mr. Hardwick and cases discussing medical

monitoring programs, the district court concluded that Mr. Hardwick sufficiently

defined his request for relief. (*See* Class Cert. Order, R.233, PageID#6707–10.)

Despite the evidence and examples provided by Mr. Hardwick, Defendants

contend that the district court erred because Mr. Hardwick purportedly failed to

describe his requested injunctive relief "with specificity." (Dfs.' Br., Dkt.54, p.47.)

The record tells a different story.

### A. Mr. Hardwick sufficiently identified the injunctive relief sought by the class.

If a specificity requirement applies here, Mr. Hardwick has satisfied it. He

---

[10] An amicus asserts that the injunctive relief requested by Mr. Hardwick "inherently 'enlarge[s]' litigants' substantive rights" because such relief is purportedly only available to a class. (LCJ Br., Dkt.68, p.18.) This argument has not merit. The Ohio Supreme Court has recognized medical monitoring with accompanying studies as a form of injunctive relief available under Ohio law. *Wilson*, 817 N.E.2d at 65. That court has never held that this permitted form of relief is only available in a class action. *See id.* Mr. Hardwick's request for a form of relief expressly permitted under Ohio law does not enlarge any substantive right. *See* 28 U.S.C. § 2072(b).

has more than adequately described the requested relief. (*E.g.*, First Am. Compl., R.96, PageID#576–77, 590–91; Combined Mem. in Opp. to Mots. to Dismiss, R.94, PageID#523, 531–32; Mot. for Class Cert., R.164, PageID#1494–96, 1506–07, 1515, 1524, 1532–35, 1541–42; Reply in Supp. of Mot. for Class Cert., R.210, PageID#6305, 6325–29, 6332–33, 6335, 6346.) The district court held that the information provided by Mr. Hardwick was sufficient for it to envision an injunction establishing a traditional medical monitoring program accompanied by scientific studies. (*See* Class Cert. Order, R.233, PageID#6707–10.)

As the district court acknowledged, the C8 Science Panel, the C8 Medical Monitoring Program, and a multi-site study designed by the Agency for Toxic Substances and Disease Registry offer clear examples of how the injunctive relief requested here can be structured. (*See, e.g.*, Mot. for Class Cert., R.164, PageID#1494–96; Reply in Supp. of Mot. for Class Cert., R.210, PageID#6325, 6328; Class Cert. Order, R.233, PageID#6709–10.)[11]

In their discussion of the purported specificity requirement, Defendants ignore the example of the C8 Medical Panel, the C8 Science Panel, and the other studies presented by Mr. Hardwick that establish a framework for structuring the

---

[11] A recent publication from the National Academies of Sciences, Engineering, and Medicine also provides an example of how the requested medical monitoring program could be structured. *See* Nat'l Acads., *Guidance on PFAS Exposure, Testing, and Clinical Follow-Up* (2022), *available at* https://tinyurl.com/58crdyv5.

requested injunctive relief. (*See* Dfs.' Br., Dkt.54, p.48–49.) Defendants do not even try to argue in their brief that the C8 Medical Monitoring Program cannot serve as a model for the injunctive relief requested here. Only by disregarding the evidence and arguments actually presented by Mr. Hardwick can Defendants assert that the requested injunctive relief lacks specificity.

### B. Mr. Hardwick need not satisfy the level of specificity arbitrarily demanded by Defendants.

To be clear, though, the level of specificity demanded by Defendants has no basis in the law. (*See* Dfs.' Br., Dkt.54, p.49.)

As the district court recognized, Rule 65(d)(1) does not address class certification. (Class Cert. Order, R.233, PageID#6707–08.) The rule is not even directed at litigants. Rule 65(d)(1) mandates that a *court* granting an injunction state in its order "the reasons why [the order] issued," "its terms specifically," and a description "in reasonable detail[,] … [of] the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). And nowhere does the rule state or even suggest that a plaintiff must explain, at the class certification stage, specific details of the injunctive relief he seeks. *See id.*; *see also Shook*, 543 F.3d at 605 n.4; *Ashker v. Governor of State of California*, No. C 09-5796 CW, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014). Such detail comes later at the merits or injunction stage. *See, e.g.*, *Shook*, 543 F.3d at 605 n.4.

Rule 23(b)(2) contains no such requirement either. When a plaintiff identifies an action or refusal to act by the defendant that applies generally to the class, the rule simply mandates that the injunctive relief be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Shreve v. Franklin Cnty., Ohio*, No. 2:10-cv-644, 2010 WL 5173162, at *16 (S.D. Ohio Dec. 14, 2010).

The precise details of how the requested medical monitoring program will operate is not a class certification issue. It is a merits question. *See, e.g.*, *Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2017 WL 213071, at *8 (S.D. Ohio Jan. 17, 2017). And such issues are not proper at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). After discovery, and after the parties have addressed the merits of the case, the district court will then need to describe in "reasonable detail" any injunction that it issues. Fed. R. Civ. P. 65(d)(1). Neither the district court, nor Mr. Hardwick, need satisfy the arbitrary level of specificity demanded by Defendants. And there is definitely no obligation to do so now, before the parties have conducted any merits discovery and before the district court has decided whether it will even issue an injunction.

### C. The case law cited by Defendants and the motions panel does not support the arbitrary level of specificity demanded by Defendants.

Defendants cite out-of-circuit cases for the proposition that some specificity requirement applies at the class certification stage. (Dfs.' Br., Dkt.54, p.65); *In re*

*3M Co.*, 2022 WL 4149090, at *8–9. Yet those cases clarify that any specificity required at the class certification stage is only that level of detail needed for the district court to "*conceive of an injunction*" that satisfies the requirements of Rules 23(b)(2) and 65(d). *Vallario*, 554 F.3d at 1268 (emphasis added); *see also Shook*, 543 F.3d at 605 n.4. Under this line of out-of-circuit cases, only in "the motion for relief or proposed injunction" must the description of the requested injunctive relief "be specific enough to comport with Rule 65(d)." *Shook*, 543 F.3d at 605 n.4.

The cited out-of-circuit cases also clarify that the types of requests for injunctive relief that fail this specificity requirement are far different than Mr. Hardwick's request. Those cases involved requests for injunctive relief lacking any objective basis for their implementation or the plaintiff's failure to explain how a court could define the requested injunctive relief. *See Prantil v. Arkema Inc.*, 986 F.3d 570, 581–82 (5th Cir. 2021); *Kartman v. State Farm Mut. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011); *Vallario*, 554 F.3d at 1268; *Shook*, 543 F.3d at 605–06; *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007).

Those requests for injunctive relief contrast with Mr. Hardwick's request. Mr. Hardwick has both (1) explained how the requested medical monitoring program, with accompanying studies, could be structured and (2) identified multiple examples, including the C8 Medical Monitoring Program, for the district court to use as a model when structuring the program. (*E.g.*, First Am. Compl.,

53

R.96, PageID#576–77, 590–91; Combined Mem. in Opp. to Mots. to Dismiss, R.94, PageID#523, 531–32; Mot. for Class Cert., R.164, PageID#1494–96, 1506–07, 1515, 1524, 1532–35, 1541–42; Reply in Supp. of Mot. for Class Cert., R.210, PageID#6305, 6325–29, 6332–33, 6335, 6346.)

*Prantil* is also easily distinguished. *Prantil* involved a requested injunction establishing a medical monitoring program. 986 F.3d at 581–82. But there, the district court "did not discuss the range or types of medical monitoring the injunction would implement," and there was uncertainty about "whether individual health considerations need[ed] to be addressed for relief to be adequate." *Id.* Here, by contrast, Mr. Hardwick identified medical monitoring programs and studies that serve as examples of how the injunction could be implemented. (*See, e.g.*, Mot. for Class Cert., R.164, PageID#1494–96, 1506–07; Reply in Supp. of Mot. for Class Cert., R.210, PageID#6325–26.) And because the requested medical monitoring program would involve a common menu of options available to all class members, there would be no issue of individual health concerns rendering the program inadequate. (*See* Reply in Supp. of Mot. for Class Cert., R.210, PageID#6328.)

Nothing in this case law holds that a plaintiff fails to adequately describe his requested injunctive relief after providing multiple examples of how the relief can be structured. Nor does this case law support the notion that Mr. Hardwick must answer Defendants' lengthy list of purported "critical questions," (Dfs.' Br.,

Dkt.54, p.49), before the district court can certify a class. *See, e.g.*, *Shook*, 543 F.3d at 605 n.4. Mr. Hardwick has satisfied any specificity requirement.

**V.    The district court properly defined the class.**

The district court did not err in defining the class either. Defendants challenge the district court's class definition based on purported testing obstacles and ascertainability. (Dfs.' Br., Dkt.54, p.50–53.) Neither criticism has traction.

**A. Ascertainability is not a requirement of class certification here.**

This Court has held that "ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Cole*, 839 F.3d at 543. This holding defeats Defendants' ascertainability argument.

Despite this binding precedent, Defendants argue that an ascertainability requirement "is implicit in Rule 23 generally" and should therefore apply here. (Dfs.' Br., Dkt.54, p.52–53.) But this Court rejected that precise argument in *Cole*. *See* 839 F.3d at 540. This Court held that although ascertainability is a requirement of certifying a Rule 23(b)(3) class, ascertainability is not a requirement of certifying a class under Rule 23(b)(2). *Id.* at 541–42.

At least three other circuits have also held that ascertainability is not a requirement for class certification under Rule 23(b)(2). *E.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). And other courts,

including the Second Circuit, have certified broadly defined Rule 23(b)(2) classes
that are likely not "ascertainable." *E.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 375,
380 (2d Cir. 1997); *Mental Disability Law Clinic v. Hogan*, No. CV-06-6320, 2008
WL 4104460, at *17, *20 (E.D.N.Y. Aug. 29, 2008).

Confronted with this weight of authority, Defendants assert that
ascertainability is required when a party seeks a mandatory injunction, rather than
a prohibitory injunction, under Rule 23(b)(2). (Dfs.' Br., Dkt.54, p.52–53.) But
Defendants identify no case, much less any case from this Court, that stands for
that proposition. This Court did not base its holding in *Cole* on whether the
requested injunction is prohibitory or mandatory. *See* 839 F.3d at 541–42.

Under this Court's established precedent, Mr. Hardwick was not required to
establish ascertainability to obtain class certification. *See Cole*, 839 F.3d at 542.
And the district court had no duty to determine ascertainability or define the class
based on an ascertainability requirement that does not apply here. *See id.*[12]

---

[12] Even if an ascertainability requirement applied, the class definition enumerated
by the district court satisfies it. To show ascertainability under Rule 23(b)(3), this
Court only requires that a class definition include objective criteria that can
determine class membership without resolving the merits of the case. *Young*, 693
F.3d at 538–39. This objective criteria need not allow for perfect, or even easy,
identification of the class members. *See Rikos*, 799 F.3d at 526. The class
definition satisfies that standard. (Class Cert. Order, R.233, PageID#6663.)

### B. Blood serum concentration testing is unnecessary, and purported testing obstacles are therefore irrelevant.

Class certification in this case does not require blood serum testing, and Mr. Hardwick has not requested it. Setting aside the fact that ascertainability is not a requirement for class certification here, testing is unnecessary for another, more basic reason. Both Mr. Hardwick and Defendants already agree that existing testing proves that essentially everyone in America—and thus essentially everyone subject to the laws of Ohio—has **detectible** amounts of PFOA and at least one other PFAS (such as PFOS) in their blood serum. (*See* Mot. for Class Cert., R.164, PageID#1497; Wait Rep., R.200-5, PageID#5352, Table 2.2; Alexander Rep., R.200-1, PageID#5000, 5026–27; Herzstein Rep., R.200-3, PageID#5268.)

The class definition created a *floor*, not a ceiling. So even if the class definition's floor is below the current detection threshold for certain PFAS, that Defendants agree essentially everyone has detectible amounts in their blood serum means there is no dispute that essentially everyone is a class member. That's because anyone subject to the laws of Ohio with a detectible amount of PFOA and at least one other PFAS in their blood serum would have higher concentrations than established by the class definition's floor.

This undisputed fact renders any testing for ascertainability unnecessary and any purported testing obstacles irrelevant. Any cost or issues relating to unnecessary, unrequested testing has no relevance or bearing on class certification.

## CONCLUSION

This Court should affirm the district court's class certification order.

Dated: March 3, 2023

Respectfully submitted,

*/s/ Robert A. Bilott*
Robert A. Bilott
Aaron M. Herzig
William E. Braff
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 381-2838
bilott@taftlaw.com
aherzig@taftlaw.com
bbraff@taftlaw.com

David J. Butler
Jonathan N. Olivito
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
Phone: (614) 221-2838
dbutler@taftlaw.com
jolivito@taftlaw.com

*Counsel for Plaintiff-Appellee Kevin D. Hardwick*

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and 6 Cir. R. 32 because it contains 12,973 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

Dated: March 3, 2023                    */s/ Robert A. Bilott*
                                        Robert A. Bilott

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically on March 3, 2023 using the Court's CM/ECF system, which will serve notice of this filing on all counsel of record.

*/s/ Robert A. Bilott*
Robert A. Bilott

## ADDENDUM – DESIGNATION OF RELEVANT DOCUMENTS

Under 6 Cir. R. 30(g), Plaintiff-Appellee Kevin D. Hardwick designates the

following relevant documents from the district court's electronic record:

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| 1 | Class Action Complaint and Jury Demand | 10/04/2018 | 1–33 |
| 67 | Defendants' Joint Motion to Dismiss | 02/14/2019 | 254–255 |
| 67-1 | Memorandum in Support of Defendants' Joint Motion to Dismiss | 02/14/2019 | 256–293 |
| 68 | Defendant 3M Company's Motion to Dismiss for Lack of Personal Jurisdiction | 02/14/2019 | 294–307 |
| 69 | Defendant Archroma Management LLC's Motion to Dismiss for Lack of Personal Jurisdiction | 02/14/2019 | 308–324 |
| 71 | Defendant Solvay Specialty Polymers USA, LLC's Motion to Dismiss the Class Action Complaint | 02/14/2019 | 331–344 |
| 72 | Defendant Daikin America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction | 02/14/2019 | 345–356 |
| 73 | Defendant E.I. du Pont de Nemours and Company's and the Chemours Company FC, LLC's Motion to Dismiss | 02/14/2019 | 357–370 |
| 82 | Defendant Daikin Industries, Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction | 03/06/2019 | 389–406 |
| 83 | Defendants Arkema Inc.'s and Arkema France's Motion to Dismiss | 03/06/2019 | 411–413 |
| 84 | Defendants Arkema Inc.'s and Arkema France's Motion to Dismiss for Lack of Personal Jurisdiction | 03/06/2019 | 414–433 |
| 89 | Stipulation between Plaintiff and Defendant AGC Inc. | 03/26/2019 | 448–450 |

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| 90 | Notice of Voluntary Dismissal without prejudice as to Defendant AGC Inc. | 03/26/2019 | 451–452 |
| 91-1 | Order requiring Status Report regarding Defendant Dyneon, L.L.C. | 04/01/2019 | 455 |
| 92 | Plaintiff's Status Report Regarding Defendant Dyneon, L.L.C. | 04/08/2019 | 456–458 |
| 93 | Plaintiff's Motion for Leave to File his First Amended | 04/12/2019 | 459–496 |
| 94 | Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss | 04/12/2019 | 498–559 |
| 95 | Order Granting Plaintiff's Motion for Leave to File his First Amended Complaint | 04/15/2019 | 560 |
| 96 | First Amended Class Action Complaint and Jury Demand | 04/16/2019 | 561–594 |
| 101 | Defendants' Unopposed Motion for Miscellaneous Relief: To Apply their Motions to Dismiss to the First Amended Complaint | 04/30/2019 | 605–609 |
| 105 | Reply in Support of Defendants' Joint Motion to Dismiss | 05/13/2019 | 613–663 |
| 106 | Reply in Support of Daikin Industries Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction | 05/13/2019 | 664–669 |
| 107 | Reply in Support of Daikin America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction | 05/13/2019 | 670–676 |
| 108 | Defendant Archroma Management LLC's Reply Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction | 05/13/2019 | 677–688 |
| 109 | Defendants Arkema Inc.'s and Arkema France's Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction | 05/13/2019 | 689–705 |
| 110 | Defendant 3M Company's Reply Memorandum in Support of its Motion | 05/13/2019 | 706–716 |

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| | to Dismiss for Lack of Personal Jurisdiction | | |
| 111 | Defendant E.I. du Pont de Nemours and Company's and the Chemours Company FC, LLC's Reply in Support of their Motion to Dismiss | 05/13/2019 | 717–729 |
| 112 | Reply Memorandum of Law in Support of Defendant Solvay Specialty Polymers USA, LLC's Motion to Dismiss the Class Action Complaint | 05/13/2019 | 730–737 |
| 113 | Defendant AGC Chemicals Americas, Inc.'s Motion to Dismiss | 05/20/2019 | 738–755 |
| 119 | Plaintiff's Response in Opposition to Defendant AGC Chemicals Americas, Inc.'s Motion to Dismiss | 06/10/2019 | 773–784 |
| 121 | Defendant AGC Chemicals Americas, Inc.'s Reply in Support of Motion to Dismiss | 06/24/2019 | 790–798 |
| 125 | Order regarding oral argument | 08/26/2019 | 806 |
| 126 | Transcript of oral argument on motions to dismiss | 09/03/2019 | 807–834 |
| 128 | Opinion and Order denying Defendants' motions to dismiss | 09/30/2019 | 835–869 |
| 131 | Defendants Archroma Management LLC's and Daikin Industries, Ltd.'s Motion to Reconsider Denial of Motions to Dismiss for Lack of Personal Jurisdiction | 10/28/2019 | 876–891 |
| 133 | Plaintiff's Response in Opposition to Defendants Archroma Management LLC and Daikin Industries, Ltd.'s Motion to Reconsider Denial of Motions to Dismiss for Lack of Personal Jurisdiction | 11/18/2019 | 900–911 |
| 136 | Answer filed by Defendant Solvay Specialty Polymers, USA, LLC | 12/02/2019 | 917–953 |

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| 137 | Answer filed by Defendant AGC Chemicals Americas, Inc. | 12/02/2019 | 954–982 |
| 138 | Answer filed by Defendant 3M Company | 12/02/2019 | 983–1049 |
| 139 | Answer filed by Defendant Daikin America, Inc. | 12/02/2019 | 1050–1092 |
| 140 | Defendants Archroma Management LLC's and Daikin Industries, Ltd.'s Reply in Support of Motion to Reconsider Denial of Motions to Dismiss for Lack of Personal Jurisdiction | 12/02/2019 | 1093–1107 |
| 141 | Answer filed by Defendant Arkema, Inc. | 12/02/2019 | 1108–1166 |
| 142 | Answer filed by Defendant Arkema France, S.A. | 12/02/2019 | 1167–1225 |
| 143 | Answer filed by Defendant E.I. du Pont de Nemours and Company | 12/02/2019 | 1226–1307 |
| 144 | Answer filed by the Defendant Chemours Company | 12/02/2019 | 1308–1397 |
| 147 | Rule 26(f) Report | 02/19/2020 | 1405–1412 |
| 150 | Order granting Motion to Apply Defendants' Motions to Dismiss to the First Amended Complaint | 03/02/2020 | 1419 |
| 156 | Preliminary Pretrial Order | 04/30/2020 | 1429–1431 |
| 157 | Opinion and Order regarding class certification and protective order | 06/16/2020 | 1432–1435 |
| 161 | Protective Order | 06/29/2020 | 1450–1475 |
| 164 | Plaintiff's Motion for Class Certification | 07/31/2020 | 1481–1548 |
| 164-1 to 164-5, 165, 165-1 to 165-6 | Plaintiff's exhibits in support of his Motion for Class Certification | 07/31/2020 | 1549–4442 |
| 166 | Opinion and Order denying Motion to Reconsider Denial of Motions to Dismiss for Lack of Personal Jurisdiction | 08/03/2020 | 4443–4456 |

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| 178 | Answer filed by Defendant Archroma Management LLC | 08/24/2020 | 4505–4539 |
| 187 | Answer filed by Defendant Daikin Industries Ltd. | 08/31/2020 | 4591–4632 |
| 188 | Defendant Daikin Industries, Ltd.'s Petition for Permission to Appeal Under Section 1292(b) | 09/01/2020 | 4633–4649 |
| 189 | Plaintiff's Response in Opposition to Defendant Daikin Industries, Ltd.'s Petition for Permission to Appeal Under Section 1292(b) | 09/22/2020 | 4650–4667 |
| 194 | Defendant Daikin Industries, Ltd.'s Reply in Support of Petition for Permission to Appeal Under Section 1292(b) | 10/06/2020 | 4698–4709 |
| 200 | Defendants' Joint Opposition to Plaintiff's Motion for Class Certification | 12/14/2020 | 4739–4984 |
| 200-1 | Expert Report of Dominik D. Alexander | 12/14/2020 | 4985–5136 |
| 200-2 | Expert Report of Barbara D. Beck | 12/14/2020 | 5137–5244 |
| 200-3 | Expert Report of Jessica Herzstein | 12/14/2020 | 5245–5306 |
| 200-4 | Expert Report of Maureen T.F. Reitman | 12/14/2020 | 5307–5340 |
| 200-5 | Expert Report of A. Dallas Wait | 12/14/2020 | 5341–5398 |
| 200-6 | Transcript of Plaintiff's deposition | 12/14/2020 | 5399–5513 |
| 200-7 to 200-20 | Defendants' remaining exhibits for their Joint Opposition to Plaintiff's Motion for Class Certification | 12/14/2020 | 5514–5624 |
| 201 | Defendants' Sealed Joint Opposition to Plaintiff's Motion for Class Certification with sealed exhibits | 12/14/2020 | N/A |
| 206 | Opinion and Order denying Petition for Permission to Appeal | 02/17/2021 | 6273–6285 |
| 208 | Plaintiff's Unopposed Motion to Defer Personal Jurisdiction Discovery | 02/24/2021 | 6287–6289 |
| 209 | Order granting Motion to Defer Personal Jurisdiction Discovery | 02/24/2021 | Notation Order |
| 210 | Plaintiff's Reply in Support of Motion for Class Certification | 03/12/2021 | 6290–6369 |

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| 214 | Defendants' Notice of Supplemental Authority | 05/07/2021 | 6376–6407 |
| 216, 216-1 | Plaintiff's Notice of Filing Supplemental Authority in Support of his Motion for Class Certification | 07/16/2021 | 6411–6439 |
| 217, 217-1 | Defendants' Motion for Leave to File Instanter Notice of Supplemental Authority | 07/28/2021 | 6440–6508 |
| 218 | Order granting Defendants' Motion for Leave to File Instanter Notice of Supplemental Authority | 07/29/2021 | 6509 |
| 221 | Plaintiff's Response in Opposition to Defendants' Notice of Supplemental Authority | 08/17/2021 | 6514–6522 |
| 229, 229-1 | Plaintiff's Second Notice of Filing Supplemental Authority in Support of his Motion for Class Certification | 12/20/2021 | 6556–6567 |
| 230, 230-1 | Plaintiff's Third Notice of Filing Supplemental Authority in Support of his Motion for Class Certification | 12/30/2021 | 6568-6576 |
| 231 | Defendants' Response to Plaintiff's Third Notice of Supplemental Authority | 01/17/2022 | 6577–6581 |
| 232 | Plaintiff's Fourth Notice of Filing Supplemental Authority in Support of his Motion for Class Certification | 02/28/2022 | 6657–6662 |
| 233 | Opinion and Order granting in part and denying in part Plaintiff's Motion for Class Certification | 03/07/2022 | 6663–6711 |
| 236 | Order directing the parties to meet and confer regarding the briefing schedule for additional class certification issues | 03/22/2022 | 6716 |
| 237 | Order vacating the scheduling order because of Defendants' Rule 23(f) appeal | 03/22/2022 | 6717 |
| 244, 244-1 | Order and Judgment issued by the motions panel granting Rule 23(f) review | 09/09/2022 | 6730–6754 |

| Record Number | Description | Date | PageID# |
|---|---|---|---|
| 245 | Notice of Appeal | 09/12/2022 | Notation Order |