No. 22-3765

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**KEVIN D. HARDWICK**,

*Plaintiff-Appellee*

v.

**3M COMPANY, et al.**,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Ohio
Case No. 2:18-cv-1185
The Honorable Edmund A. Sargus, Jr.

## PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Robert A. Bilott
Aaron M. Herzig
William E. Braff
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 381-2838
bilott@taftlaw.com
aherzig@taftlaw.com
bbraff@taftlaw.com

David J. Butler
Jonathan N. Olivito
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
Phone: (614) 221-2838
dbutler@taftlaw.com
jolivito@taftlaw.com

*Counsel for Plaintiff-Appellee Kevin D. Hardwick*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………... ii

STATEMENT OF PURPOSE ……………………………………………… 1

    I.    Rehearing En Banc ……………………………………………….. 1

    II.   Panel Rehearing ………………………………………………….. 3

STATEMENT OF THE CASE ……………………………………………... 5

    I.    Statement of Facts ………………………………………………... 5

    II.   Procedural History ………………………………………………. 6

ARGUMENT ……………………………………………………………... 9

    I.    This Landmark Class Action Addresses Critical Environmental and Public Health Issues that Justify En Banc Review. ………………… 9

    II.   The Panel's Traceability Analysis Conflicts with Sixth Circuit Precedent and Thus Invites En Banc Review. …………………….. 11

    III.  Because the Record and Pleadings Establish Traceability, the Panel Should Grant Rehearing. ………………………………………... 14

CONCLUSION …………………………………………………………… 17

CERTIFICATE OF COMPLIANCE ……………………………………… 19

CERTIFICATE OF SERVICE …………………………………………….. 20

# TABLE OF AUTHORITIES

## Cases

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*,
389 F.3d 536 (6th Cir. 2004) ...................................................................13

*Buchholz v. Meyer Njus Tanick, PA*,
946 F.3d 855 (6th Cir. 2020) ........................................................ 2, 3, 11

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
344 F.3d 1263 (11th Cir. 2003) ................................................................3

*Fox v. Saginaw Cnty.*,
67 F.4th 284 (6th Cir. 2023) ...................................................................13

*Grow Michigan, LLC v. LT Lender, LLC*,
50 F.4th 587 (6th Cir. 2022) .....................................................................3

*In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*,
2:13-md-2433 ........................................................................... 6, 7, 8

*Parsons v. U.S. Dept. of Justice*,
801 F.3d 701 (6th Cir. 2015) .............................................................. 11, 12, 13

*Petro-Chem Processing, Inc. v. EPA*,
866 F.2d 433 (D.C. Cir. 1989) ...............................................................11

*Snyder-Hill v. Ohio St. Univ.*,
54 F.4th 963 (Mem.) (6th Cir. 2022) ......................................................11

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021) ............................................................................15

## Rules

6 Cir. R. 35 ...............................................................................................9

Fed. R. App. P. 35 ......................................................................... 1, 2, 19

Fed. R. App. P. 40 ....................................................................................1

## STATEMENT OF PURPOSE

Plaintiff Kevin Hardwick petitions the Court under Fed. R. App. P. 35 and 40 for panel rehearing and rehearing en banc of its published opinion in *Hardwick v. 3M Co.*, et al., No. 22-3765, slip op. (Nov. 27, 2023) (the "Opinion"). At minimum, the Court should modify the scope of its remand to permit the trial court to consider whether Plaintiff should be entitled to amend his complaint to resolve the pleading issues that concerned the panel. When Mr. Hardwick opposed Defendants' Motion to Dismiss, he moved in the alternative for leave to file an amended complaint should the Complaint fail to plead sufficient facts "in support of this Court's jurisdiction." (Mem. in Opp'n, R.94, PageID#498, 557.) He should be afforded that opportunity.

### I. Rehearing En Banc

If ten people poison the town well with the same poison, common sense dictates that victims would be able to sue all ten perpetrators. That would be true even if the victims couldn't tell which specific perpetrator's poison molecules were to blame for each specific victim's injury. But under the Opinion's analysis, lack of traceability bars that suit and allows the perpetrators to get away with it. And the more people who poison the well, the less likely it is that victims can sue. That result warrants reconsideration.

Mr. Hardwick moves for rehearing en banc under Fed. R. App. P. 35(a)(2) to raise an exceptionally important question: can the entities responsible for creating and dispersing toxic forever chemicals escape liability at the pleading stage, despite allegations that each entity's toxin has caused injury? The consequences loom large: Defendants have conspired to contaminate the bodies and blood of nearly every American with their toxins—commonly called "forever chemicals" because they persist and accumulate, causing serious disease. This is, therefore, an exceptionally important class action, akin to the landmark tobacco and asbestos litigations.

Mr. Hardwick also moves for rehearing en banc under Fed. R. App. P. 35(a)(1) to maintain uniformity on this Court's traceability analysis. The Opinion upended a critical class action necessary to protect the health of millions of Ohioans by finding that Mr. Hardwick did not establish traceability "based on the pleadings alone." (Op., 5.) But Mr. Hardwick's pleadings, as well as additional evidence that had been generated during class certification, demonstrated traceability. The Opinion contradicts well-established precedent that initial pleadings need not identify every defendant with certainty to establish traceability, and may treat them as a collective under Article III.

The Opinion ignores that even indirect injuries are still fairly traceable to defendants. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020)

("[H]arms that flow 'indirectly from the action in question can be said to be "fairly traceable" to that action for standing purposes.'") (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)). And traceability imposes a "modest" hurdle. *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 592 (6th Cir. 2022) (quoting *Buchholz*, 946 F.3d at 866). At bottom, "[*a*]*ny harm* flowing from defendant's conduct, even indirectly, is said to be fairly traceable." *Id.* (emphasis added). That standard bears little resemblance to the Opinion's analysis.

Rewriting the traceability standard, the Opinion dismantled a certified class and even denied an individual plaintiff the right to sue, prior to any merits discovery. This elevated traceability standard creates a split of authority within the Circuit. Rehearing en banc is necessary to avoid that result.

## II. Panel Rehearing

Mr. Hardwick also seeks panel rehearing because the Court departed from this Circuit's traceability precedent, as described above, and disregarded material parts of the pleadings and record. Mr. Hardwick's pleadings and undisputed evidence show that each Defendant manufactured the toxins at issue and bears responsibility for contaminating the blood of Mr. Hardwick, and the other class members, with PFAS, including at least PFOA. Mr. Hardwick specifically pled that each, individual Defendant made and distributed the toxins now in his blood and clearly pled "facts

plausibly supporting an inference that each defendant 'likely caused' at least one of those PFAS compounds to end up in is blood." (Op., 6.) Indeed, Mr. Hardwick has pled (and clarified in his additional class certification submissions and evidence) that Defendants *all* caused at least one such compound—PFOA—to end up in his blood. And as for Defendant 3M, there is no question that it also contaminated Mr. Hardwick's blood with PFOS.[1] The undisputed class certification evidence shows that 3M is the *only* manufacturer of that toxin in this country.

If the decision stands, the lesson is that companies should conspire together to poison people with the same poison and *none* of them can be held responsible, unless the poisoned person can spell out *in his complaint* (and before any merits or expert discovery occurs) the detailed scientific analyses and expert fingerprinting work necessary to determine how much of that poison came from each company. Without such extraordinary expert work and merits analysis up-front, courts cannot help and will not place the costs of the harm on the companies that jointly and collectively caused the harm. Thus, the panel should grant rehearing of the case.

Alternatively, at minimum, the panel should modify the scope of its remand to permit the trial court to decide if Mr. Hardwick should be allowed to amend his

---

[1] Mr. Hardwick's First Amended Complaint contains many additional, specific allegations concerning Defendants 3M and DuPont. (First Am. Compl., R.96, PageID#570–571.) The pleadings leave no doubt that those Defendants created PFAS, knew about and covered up the danger posed by PFAS materials, and are responsible for injuries caused by PFAS.

complaint to address the perceived pleading issues raised in the Opinion. Mr. Hardwick preserved the right to seek amendment. (Mem. in Opp'n, R.94, PageID#498, 557.) Permitting amendment is the more appropriate remedy here, where the panel found pleading defects that an amendment could remedy without raising potential issues related to statutes of limitations and other important concerns.

## STATEMENT OF THE CASE

### I. Statement of Facts

This case is a class action for medical monitoring and related injunctive relief stemming from Defendants' contaminating the blood of millions of Americans with a single harmful chemical, known as PFOA, mixed with at least one of the other chemicals in this same class of "forever chemicals," known collectively as "PFAS." The threat to human health from PFOA (and other PFAS) is well-established. (First Am. Compl., R.96, PageID# 569–573.)

Defendants do not dispute that they caused PFOA (and other PFAS) to be created and deposited into human blood. Nor do they dispute that that these toxins did not exist before Defendants created them. Evidence confirms that Defendants, and only Defendants, were members of the group of telomer and fluoropolymer manufacturers, which U.S. EPA had identified as the known makers of PFOA. (Mot for Class Cert., Exs. C-8, C-11–16, C-54, C-55, R. 164-2, 164-3, 165-3.) It is

likewise undisputed that U.S. EPA has long-identified defendant 3M as the sole
U.S. manufacturer of a second PFAS chemical found in human blood, known as
PFOS. (Mot for Class Cert., Ex. C-50, R.165-3, PageID#3665.)

Defendants knew for decades that their manufacture and release of their
chemicals would contaminate human blood, where it would accumulate and
persist, resulting in serious, significant harm. But they told no one. Instead, they
conspired and covered up what they knew and hid the risks. (First Am. Compl.,
R.96, PageID#590.)

Only because of Defendants did PFOA (and other PFAS), enter Mr.
Hardwick's—or any other class members'—blood. And only because of Defendant
3M did PFOS also enter Mr. Hardwick's—and the class members'—blood. There
is no natural background level of PFOA, PFOS, or any other PFAS. (First Am.
Compl., R.96, PageID#574.) Nor is there any "normal" or "acceptable" level of
PFOA, PFOS, or any other PFAS in human blood. (*Id.*) The record leaves no doubt
that only Defendants created the harmful toxins that now permanently reside in the
bodies of millions of Ohioans, including Mr. Hardwick.

## II.   Procedural History

Mr. Hardwick filed this action as a case related to the multidistrict litigation,
*In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, 2:13-md-
2433 ("C8 MDL"). That action has been pending in the district court for more than

a decade. (Class Cert. Order, R.233, PageID#6663, 6667.) The C8 MDL deals with Defendant E. I. du Pont de Nemours and Company ("DuPont") contaminating the communities around one of its plants with PFOA. (*See id.*, PageID#6663–64.) The C8 MDL, and the prior decade and a half of litigation, confirmed the harms posed by PFOA, including its links to cancers.

At the initial pleading stage (before any discovery), Defendants tried to dismiss this case through multiple motions and on many grounds, including standing, jurisdiction, and constitutional issues. (Order Denying Mots. to Dismiss, R.128, PageID#841.) After extensive briefing and oral argument, the district court rejected Defendants' arguments. (*See id.*, PageID#835.) The district court found "Hardwick has alleged injury sufficient to state a claim" upon which relief can be granted, and rejected Defendants' multiple, and repeated, standing, constitutional, and jurisdictional challenges. (Op. & Order, R.128, PageID#849 (denying motions to dismiss); Op. & Order, R.166 (denying motions to reconsider); Op. & Order, R.206 (denying petition for permission to appeal)).

The district court offered Defendants an opportunity for further discovery related to Mr. Hardwick's allegations as to the companies' specific, individual conduct, (Op. & Order, R.206, PageID#6285), but Defendants strategically deferred any such discovery "until after the Court's decision on class certification." (Pl.'s Unopposed Mot. to Defer Personal Jur. Discovery, R.208, PageID#6287.)

Defendants also agreed that discovery on the merits would be deferred until after the close of the class certification phase. (Rule 26(f) Report, R.147, PageID#1408 ("The parties agree to defer setting a discovery cut-off date until after the Court issues a decision on the motion for class certification and, if applicable, the Sixth Circuit rules on a Rule 23(f) petition or resulting appeal.")).

After reviewing the extensive evidence and information submitted by the parties for class certification briefing, which incorporated the decades of information provided to the Court on PFOA through the C8 MDL, the district court certified a class based on *one* particular PFAS—PFOA—and the harmful, synergistic interactions between that *one* toxin and at least *one* other PFAS. It defined the class as: "Individuals subject to the laws of Ohio, who have 0.05 parts per trillion (ppt) of PFOA (C-8) and at least 0.05 ppt of any other PFAS in their blood serum." (Op. & Order, R.233, PageID#6663.) Before any further class certification issues could be explored or any merits discovery commenced in the proceedings below, this Circuit granted Defendants' Rule 23(f) petition, and vacated class certification for lack of jurisdiction due only to lack of traceability. (Op., 7.)

**ARGUMENT**

## I.   This Landmark Class Action Addresses Critical Environmental and Public Health Issues that Justify En Banc Review.

The Sixth Circuit favors en banc review for a "precedent-setting error of exceptional public importance," like this one. Loc. R. 35(a). The Opinion dismissed a class of millions of people poisoned by man-made carcinogenic PFAS that will persist and remain in their blood for decades, like a ticking time bomb. That decision cannot be of higher public importance, and thus should receive en banc review.

Defendants' conduct, individually and collectively as co-conspirators, has contaminated the blood and bodies of Mr. Hardwick and almost every Ohioan with toxins that cause cancer and other serious diseases. (*See* First Am. Compl., R.96, PageID#567, 571, 573, 574 (describing scientific research and tests confirming links between PFOA contamination and serious disease, including various cancers).) Class disputes over these forever chemicals are, and will continue to be, critical for safeguarding public health, just like the landmark tobacco and asbestos cases. Mr. Hardwick's suit to protect the health of millions of Ohioans deserves a second look before being dismissed for lack of traceability at the pleading stage.

The legal questions in this appeal are also exceptionally important to the public. Mr. Hardwick seeks traditional medical monitoring and related injunctive relief to address the increased risk of serious disease caused by exposure to PFOA,

mixed with at least one other PFAS chemical, such as PFOS. Defendants'
coordinated efforts to manufacture and release those fungible toxins resulted in Mr.
Hardwick's injury. This Circuit should revisit the Opinion's holding that the ten
known manufacturers of PFOA (and sole manufacturer of PFOS), who caused
irreversible damage by creating and disseminating their harmful toxins into the
blood of millions of people, can escape liability because each victim cannot show,
early in litigation, which specific Defendant is to blame for their personal harm.[2]

Such a result is not only inconsistent with well-settled precedent on
traceability but it ignores the undisputed, inherent nature of PFAS blood
contamination and the industry that created it. Tracking down the precise source of
PFAS molecules in an individual's blood would require extensive fact and expert
discovery, along with extensive expert analyses. That takes place during the merits
stage, where parties begin exchanging merits discovery and expert opinions. Yet
no such extensive merits discovery (fact or expert) had occurred prior to class
certification below. And it was known (as Mr. Hardwick alleged below) that, but
for those ten companies that made and spread these PFAS, no one would be
contaminated by those chemicals. If the Opinion stands as precedent, Defendants

---

[2] As to PFOS in everyone's blood, the Opinion overlooks that 3M was the sole U.S.
manufacturer. (Mot for Class Cert., Ex. C-50, R.165-3, PageID#3665.)

will seek to cut short future PFAS cases before any merits discovery (fact or expert) occurs.

Litigation over PFOA, PFOS, and other forever chemicals is not going away. The question of traceability for those injured by compounds Defendants created is a question of public importance. So en banc review makes sense because the Opinion's "errors are likely to multiply" in future "[c]ases arising out of any" PFOA or PFAS injury. *Snyder-Hill v. Ohio St. Univ.*, 54 F.4th 963 (Mem.), 970 (6th Cir. 2022) (Readler, J., dissenting from denial of rehearing en banc).

## II.    The Panel's Traceability Analysis Conflicts with Sixth Circuit Precedent and Thus Invites En Banc Review.

The panel relied on Mr. Hardwick's pleadings to dismiss the case for lacking traceability. When this Circuit evaluates traceability on the pleadings, the burden for showing traceability is "relatively modest." *Buchholz*, 946 F.3d at 855. And "harms that flow indirectly" from defendants meets Article III's traceability requirement. *Id.* (quotation omitted); *see also Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 713 (6th Cir. 2015) ("[T]he fact that an injury is indirect does not destroy standing as a matter of course."). Typically, parties only fail to show traceability when plaintiff's "own fault … break[s] the causal chain" or some third party's actions intervene. *Id.* (quoting *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989)).

11

No class member can be blamed for his or her own contamination with PFOA, PFOS (or any other PFAS). Nor can any third party be blamed—Mr. Hardwick sued the ten entities responsible for creating and manufacturing the raw PFOA chemical (and other PFAS), along with the sole U.S. manufacturer of PFOS. No one knowingly chose to ingest PFOA, PFOS, (or any other PFAS). And Defendants made sure no one knew the danger. An unbroken causal chain spans from Defendants, who manufactured and spread the PFAS that contaminated Mr. Hardwick and the class. That satisfies this Circuit's "more than speculative but less than but-for" standing for traceability. *Parsons*, 801 F.3d at 714.

The Opinion also deviated from the rule that naming many defendants does not create traceability issues. "[C]ourts have held that the fact that a defendant was one of multiple contributors to a plaintiff's injuries does not defeat causation." *Id.* (collecting cases). PFOA manufacturers caused Mr. Hardwick's harm because the chemical does not occur in nature. Mr. Hardwick sued the ten entities responsible for creating and spreading this toxic substance that increases his risk for cancer and other serious disease. He alleged that each of them poisoned him and class members. The Opinion nevertheless insists Mr. Hardwick must narrow his net to cover only the specific entity or entities responsible for the specific PFOA (or other PFAS) molecules in his blood. And the opinion entirely overlooks PFOS.

12

The Opinion also contradicts precedent confirming that when multiple parties all conspire together to create a harm, those injured by the harm have standing for a suit against defendants. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 543 (6th Cir. 2004) (defendants' pollution was fairly traceable to plaintiff's aesthetic and recreational interest in public waterways). As in *American Canoe*, Mr. Hardwick need not show exactly which Defendant caused what specific contamination, particularly at this early stage of class certification before any fact or expert merits discovery has begun.

Finally, the Opinion erred by importing heightened pleading requirements into its traceability analysis. The Opinion held that "Hardwick and the district court alike treat the defendants as a collective" and that Mr. Hardwick issued "conclusory allegations." (Op., 6.) The Opinion cites *Iqbal* to fault Mr. Hardwick's *standing* allegations. (Op., 6–7.) But "the test for standing is not whether [plaintiffs] … met … pleading standards but rather they have demonstrated their injuries to be fairly traceable to the [defendants'] actions." *Parsons*, 801 F.3d at 715. Traceability requires only that Mr. Hardwick "tie the injury to each defendant." *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023). This Circuit must correct the Opinion's traceability analysis, or else the federal pleading standards will improperly bleed into constitutional standing analysis.

13

### III.     Because the Record and Pleadings Establish Traceability, the Panel Should Grant Rehearing.

A closer inspection of the record and pleadings should alleviate the Opinion's concerns over traceability. Mr. Hardwick had significant exposure to foams containing PFOA and other PFAS materials, including PFOS. Defendants are responsible for creating and distributing this PFAS into Ohio, while concealing its known harmful effects. Each Defendant bears responsibility for victims of this contamination, like Mr. Hardwick.

The Opinion gets it right that "interaction with materials containing PFAS is a fact of daily life," and has been so since the 1950s. (Op., 1.) But to the extent the Opinion is implying that, therefore, there is no harm caused by PFAS, it is plainly wrong. (First Am. Compl., R.96, PageID#569–573.)

There is no support for the idea that that "thousands of companies … have manufactured chemicals of this general type." (Op., 3.) No record evidence (nor any allegations from Defendants) suggests that *any* entity other than the ten named Defendants herein made either the PFOA found in the blood of Mr. Hardwick and the class or the PFOS, let alone that there are purportedly "thousands of companies that have manufactured" such PFAS. (Op., at 1). Defendants claimed only that the raw PFOA, PFOS (and other PFAS) chemical(s) may ultimately have been *used* by others in making *other* products, *downstream*—not that anyone else actually made the raw PFOA, PFOS (or other PFAS) chemicals in this country. Even that bold

14

claim lacked support of any kind in the record below. (*See* Defs.' Opp'n to Mot. for Class Cert., R.200, PageID#4767–4768.)

Defendants represent the ten inventors and manufacturers of PFOA and sole U.S. maker of PFOS that "developed, manufactured, [and] released" it and (other PFAS). (Class Cert. Order, R.233, PageID#6678; *see also* Defs.' Opp'n to Mot. for Class Cert., Ex.7, R.200, PageID#5523 ("Mr. Hardwick's claims are focused on those entities that manufactured raw PFAS chemicals … not those entities that may have used PFAS or placed PFAS into products.")) The record allows one conclusion: Defendants are all members of the single group that caused the injury here.

The Opinion's lack-of-traceability conclusion contradicts the pleadings and record. The Opinion states that Mr. Hardwick has not "alleged facts plausibly supporting an inference that each defendant 'likely caused' at least one of [the five] PFAS compounds to end up in his blood." (Op., 6 (quoting *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021)). And Mr. Hardwick "has not even tried to" "tie his injury" to every Defendant. (*Id.*) It even asserts that Hardwick failed to allege "that any of these defendants, much less every one of them, manufactured any of those five compounds" in Mr. Hardwick's blood. (Op., 7.)

But that is inaccurate. The First Amended Complaint expressly states, through *individual* allegations for *each* separate Defendant, that *each* "developed,

manufactured, distributed … and/or otherwise handled and/or otherwise used

PFAS that are subject of this Complaint … in such a way as to result in the

contamination of Plaintiff's and the other class members' blood and/or bodies with

PFAS." (First Am. Compl., R.96, PageID#563–567.) Then, in *addition to* those

individual allegations, it also explains the coordinated efforts between Defendants

to create, test, and cover up the harm caused by these man-made toxins, including

through a coordinated conspiracy. (*Id.*, PageID#567–579, 588–90.) Mr. Hardwick

pled how Defendants, individually *and* collectively, took actions resulting in the

contamination of the blood and bodies of millions of Americans; not solely as a

"collective," as the Opinion claims. (Op., at 6.)That is enough for traceability:

every Defendant acted "in such a way as to result in the contamination of

Plaintiff's … blood and/or bod[y]." (First Am. Compl., R.96, PageID#563–567.)

What is more, Mr. Hardwick's pleadings directly address concerns about

who produced the specific toxins.

> Whether or not Plaintiff proves which particular Defendant produced the
> PFAS that contaminated, infiltrated, persist in, and/or accumulated in
> Plaintiff's and other members of the class' blood and/or bodies, Defendants
> will be liable to Plaintiff and the class members, based on theories of
> alternative liability and/or market share liability, because they marked,
> developed, manufactured, distributed, released, trained users, produced
> instructional materials, sold, and/or otherwise handled and/or used PFAS …
> in such a way as to result in the contamination of Plaintiff's and the other
> class members' blood and/or bodies with PFAS.

16

(First Am. Compl., R.96, PageID#584.) Mr. Hardwick also expressly alleged a stand-alone conspiracy count in his complaint. (*Id.* at PageID#588–90.) Thus, Mr. Hardwick has stated theories, including a conspiracy count and collective action allegations, under which Defendants are liable. The coordinated efforts to create and spread PFOA and other PFAS, while concealing its harmful effects, are traceable to each Defendant. So this action does not depend on whether Mr. Hardwick can identify "what companies manufactured the particular chemicals in his bloodstream." (Op., 1.) Defendants' coordinated efforts to create and spread the toxin, while concealing its dangers, caused Mr. Hardwick's injuries. Moreover, the additional evidence submitted during the class certification phase (but ignored by the panel's focus only on the initial pleadings) further confirmed the connections between these Defendants and the harm at issue here. The panel should grant rehearing to issue an opinion consistent with the pleadings and record.

## CONCLUSION

For the reasons above, the panel should grant rehearing. Alternatively, this Circuit should grant en banc review. At minimum, the panel should modify the scope of its remand order to permit the trial court to consider whether Mr. Hardwick should be allowed to amend his complaint to address the traceability issue.

Dated: December 11, 2023            Respectfully submitted,

*/s/ Robert A. Bilott*          
Robert A. Bilott
Aaron M. Herzig
William E. Braff
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 381-2838
bilott@taftlaw.com
aherzig@taftlaw.com
bbraff@taftlaw.com

David J. Butler
Jonathan N. Olivito
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
Phone: (614) 221-2838
dbutler@taftlaw.com
jolivito@taftlaw.com

*Counsel for Plaintiff-Appellee Kevin D. Hardwick*

## **CERTIFICATE OF COMPLIANCE**

This Brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 3,863 words.

*/s/ Robert A. Bilott*

## **CERTIFICATE OF SERVICE**

I hereby certify that this brief was filed on December 11, 2023 using the Court's ECF system, which will provide electronic notice constituting service of this filing.

*/s/ Robert A. Bilott*

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0256p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION.

─────────────────

KEVIN D. HARDWICK,

                *Plaintiff-Appellee,*

    *v.*

3M COMPANY; E. I. DU PONT DE NEMOURS AND
COMPANY; CHEMOURS COMPANY; ARCHROMA
MANAGEMENT, LLC; ARKEMA, INC.; ARKEMA
FRANCE, S.A.; AGC CHEMICALS AMERICAS, INC.;
DAIKIN INDUSTRIES, LTD.; DAIKIN AMERICA, INC.;
SOLVAY SPECIALTY POLYMERS, USA, LLC,

                *Defendants-Appellants.*

> No. 22-3765

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:18-cv-01185—Edmund A. Sargus, Jr., District Judge.

Argued: October 19, 2023

Decided and Filed: November 27, 2023

Before: KETHLEDGE, THAPAR, and MATHIS, Circuit Judges.

─────────────────

### COUNSEL

**ARGUED:** Paul D. Clement, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for Appellants. Aaron M. Herzig, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Daniel L. Ring, Joshua D. Yount, Michael A. Scodro, MAYER BROWN LLP, Chicago, Illinois, Andrew J. Pincus, Nicole A. Saharsky, MAYER BROWN LLP, Washington, D.C., Richard D. Schuster, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, Shawn J. Organ, Erik J. Clark, ORGAN LAW LLP, Columbus, Ohio, Lanny S. Kurzweil, MCCARTER & ENGLISH, LLP, Newark, New Jersey, Kristofor T. Henning, MCCARTER & ENGLISH, LLP, Philadelphia, Pennsylvania, Scott A. Chesin, SHOOK, HARDY & BACON LLP, New York, New York, Matthew S. Brown,

CARLILE PATCHEN & MURPHY LLP, Columbus, Ohio, Peter C. Condron, CROWELL & MORING LLP, Washington, D.C., Ronald S. Kopp, ROETZEL & ANDRESS, Akron, Ohio, Melanie Black Dubis, Charles Raynal PARKER POE, Raleigh, North Carolina, James A. King, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, Daniel A. Spira, SIDLEY AUSTIN LLP, Chicago, Illinois, Jaren Janghorbani, Theodore V. Wells Jr., Daniel J. Toal, Crystal Lohmann Parker, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, Theodore M. Grossman, JONES DAY, New York, New York, Louis A. Chaiten, James R. Saywell, JONES DAY, Cleveland, Ohio, for Appellants. Aaron M. Herzig, Robert A. Bilott, William E. Braff, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, David J. Butler, Jonathan N. Olivito, TAFT STETTINIUS & HOLLISTER LLP, Columbus, Ohio, for Appellee. Jeffrey S. Bucholtz, KING & SPALDING LLP, Washington, D.C., Samuel E. Hofmeier, BRYAN CAVE LEIGHTON PAISNER LLP, Kansas City, Missouri, Barbara A. Smith, Andrea R. Butler, BRYAN CAVE LEIGHTON PAISNER LLP, St. Louis, Missouri, Brian A. Troyer, Kyle T. Cutts, BAKER & HOSTETLER LLP, Cleveland, Ohio, Bethany G. Lukitsch, Kamran B. Ahmadian, BAKER & HOSTETLER LLP, Los Angeles, California, Matthew D. Thurlow, BAKER & HOSTETLER LLP, Washington, D.C., D. Matthew Allen, Nathaniel G. Foell, CARLTON FIELDS, Tampa, Florida, Jeffrey A. Cohen, CARLTON FIELDS, Miami, Florida, for Amici Curiae.

————————————

## OPINION

————————————

KETHLEDGE, Circuit Judge.  Seldom is so ambitious a case filed on so slight a basis. The gravamen of Kevin Hardwick's complaint is that his bloodstream contains trace quantities of five chemicals—which are themselves part of a family of thousands of chemicals whose usage is nearly ubiquitous in modern life.  Hardwick does not know what companies manufactured the particular chemicals in his bloodstream; nor does he know, or indeed have much idea, whether those chemicals might someday make him sick; nor, as a result of those chemicals, does he have any sickness or symptoms now.  Yet, of the thousands of companies that have manufactured chemicals of this general type over the past half-century, Hardwick has chosen to sue the ten defendants present here.  His allegations regarding those defendants are both collective—rarely does he allege an action by a specific defendant—and conclusory.  Yet Hardwick sought to represent a class comprising nearly every person "residing in the United States"—a class from which, under Civil Rule 23(c), nobody could choose to opt out.  And as relief for his claims,

Hardwick asked the district court to appoint a "Science Panel"—whose conclusions, he said, "shall be deemed definitive and binding on all the parties[.]"

The district court, for its part, certified a class comprising every person residing in the State of Ohio—some 11.8 million people. The defendants now appeal that order, arguing (among many other things) that Hardwick lacks standing to bring this case. We agree with that argument, and remand with instructions to dismiss the case.

## I.

The family of chemicals at issue here are called PFAS, which is short for per- and polyfluoroalkyl substances. All PFAS compounds feature exceptionally strong bonds between carbon and fluorine atoms; but different kinds of PFAS differ as to the length of their carbon chains and isomer type (branched as opposed to linear), among other things. According to the record here, some PFAS have—in the human body—an "elimination half-life" measured in days, whereas for others that period is measured in years. Together, PFAS include thousands of different compounds.

For most if not nearly all Americans, interaction with materials containing PFAS is a fact of daily life. PFAS entered mass production in the 1950s and have been used ever since in innumerable applications, including medical devices, automotive interiors, waterproof clothing and outdoor gear, food packaging, firefighting foam, non-stick cookware, ski and car waxes, batteries, semiconductors, aviation and aerospace construction, paints and varnishes, and building materials. Not surprisingly, then, the risks of PFAS exposure have long been the subject of scientific research, including a pending "national, Multi-site Study" by the Center for Disease Control and Prevention. *Pease Study*, https://www.atsdr.cdc.gov/pfas/activities/pease.html (last visited Nov. 27, 2023).

Kevin Hardwick served as a firefighter for over 40 years, and in that role he used firefighting foams that contained PFAS. He does not know what companies manufactured those foams. In connection with this litigation, Hardwick submitted to a blood draw that revealed the

presence of five particular PFAS compounds in his blood.  He does not know whether those particular PFAS were present in the foams he used.

Hardwick brought this suit in 2018, alleging that the "Defendants" caused his blood to be contaminated with PFAS.  He thereafter moved to certify a class made up of every person "residing within the United States at the time of class certification for one year or more since 1977 with 0.05 parts per trillion (ppt) or more of PFOA [which is a particular type of PFAS] and at least 0.05 ppt or more of any other PFAS in their blood serum."  Those trace amounts, the parties agree, are present in the blood of every person residing in the United States; and according to one of the defendants' experts, at least, those amounts are "orders of magnitude" less than the amounts currently detectable by any testing.

The district court granted Hardwick's motion in part, and certified under Civil Rule 23(b)(2) a class that includes every person "subject to the laws of Ohio" who has "0.05 parts per trillion (ppt) of PFOA (C-8) and at least 0.05 ppt of any other PFAS in their blood serum."  The defendants petitioned under Civil Rule 23(f) for interlocutory review of that order. We granted that petition.  *In re E.I. DuPont de Nemours & Co. C-8 Personal Injury Litig.*, No. 22-0305, 2022 WL 4149090, at *1, 10 (6th Cir. Sept. 9, 2022).

## II.

### A.

A threshold question is whether Hardwick has standing to proceed with his claims against these defendants.  Standing is a prerequisite to the federal courts' jurisdiction over this case, and thus falls within the scope of this Rule 23(f) appeal.  *See Fox v. Saginaw Cnty.*, 67 F.4th 284, 292 (6th Cir. 2023).  We review de novo the district court's determination that Hardwick has standing to assert his claims against each of the defendants here.  *Id.*

The elements of standing are familiar:  "Plaintiffs must have suffered an injury.  They must trace this injury to the defendant.  And they must show that a court can redress it."  *Id.* at 293.  Every element of that inquiry is particularized:  the court must carefully examine

"a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted" against a particular defendant. *Allen v. Wright*, 468 U.S. 737, 752 (1984); *see also Fox*, 67 F.4th at 293; *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008). Moreover, that Hardwick brought this case as a putative class action "adds nothing to the question of standing." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (cleaned up); *see also Fox*, 67 F.4th at 294 (same). Instead, like any plaintiff, Hardwick must show the existence of his own "case or controversy" as to every defendant he has chosen to sue here. *Fox*, 67 F.4th at 294.

To that end, Hardwick must establish standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Hardwick's case comes to us after class certification but before merits discovery. He says we should determine standing based on the pleadings alone; the defendants say we should consider the record as a whole. We need not resolve that dispute: the pleadings alone, along with some undisputed facts, are enough to decide the issue here.

B.

Even at the pleadings stage, of course, a complaint must do more than just check the boxes for the elements necessary for a claim to proceed. Instead, Civil Rule 8(a)(2) requires a plaintiff to allege facts "providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (internal quotation marks omitted). And the complaint's factual allegations, taken as true, "must be enough to raise a right to relief above the speculative level." *Id*. at 555. That means the complaint must allege facts supporting an inference that the defendant's liability is plausible, rather than just possible. *Id*. at 556-57.

Here, the defendants argue that Hardwick has failed to allege facts that plausibly support any element of standing. We choose to begin and end, however, with the element of traceability. That element, to reiterate, requires a showing that the plaintiff's "injury was likely caused by the

defendant"—or in this case, by each of the ten defendants.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Hardwick's alleged injury, by his own account, is the presence of five particular PFAS compounds in his blood.  He must therefore show that he has alleged facts plausibly supporting an inference that each defendant "likely caused" at least one of those PFAS compounds to end up in his blood.  *Id.*

For two reasons, Hardwick has failed to carry that burden as to any of the defendants here.  First, Hardwick and the district court alike treat the defendants as a collective.  The subject of nearly every verb in the "General Factual Allegations" section of Hardwick's First Amended Complaint is "Defendants."  Hardwick alleged, for example, that "Defendants" manufactured PFAS and "released such PFAS materials into the environment"; that "Defendants repeatedly assured and represented to governmental entities" that PFAS were safe; and that "Defendants encouraged the continued and even further increased use and release into the environment of PFAS."  The district court analyzed traceability the same way, referring to the actions of "Defendants" throughout, and concluding that "Plaintiff has adequately shown that his injuries are fairly traceable to Defendants."

But the Supreme Court has long made clear that "standing is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).  That means a plaintiff cannot sue ten defendants—by lumping them all together in his allegations—when the more particular facts would allow him to proceed against only one.  (Much less none.)  For even a plaintiff "who meets the 'actual-injury requirement'"—a point sharply contested here—"does not thereby obtain a license to sue anyone over anything."  *Fox*, 67 F.4th at 293.  Instead, the plaintiff must tie his injury "to each defendant."  *Id.*  Hardwick has not even tried to make that more specific showing in this case.

Second, the allegations in Hardwick's complaint are "conclusory," which means they fall short even at the pleadings stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Here, nobody disputes that thousands of different compounds fall under the heading of PFAS; one of the defendant's experts puts the number of different PFAS at 5,000-10,000, which is roughly the number of known species of mammals on Earth.  Wait Rep., ECF 200-5, PageID 5351;

Connor J. Burgin et al., *How many species of mammals are there?*, 99 J. MAMMALOGY 1, 1 (2018).  Only five of these compounds are present in Hardwick's blood.  To allege simply that these defendants manufactured or otherwise distributed "PFAS," therefore, is patently insufficient to support a plausible inference that any of them bear responsibility for the particular PFAS in Hardwick's blood.  Yet nowhere in his complaint, for example, did Hardwick allege that any of these defendants, much less every one of them, manufactured any of those five compounds.  Nor did he allege any plausible pathway by which any of these defendants could have delivered any of these five PFAS to his bloodstream.  Instead, he simply alleged that "Defendants" manufactured and distributed "one or more PFAS materials, including in Ohio and this District, in such a way as to cause the contamination of Plaintiff's and the class members' blood[.]"  That is a textbook example of the type of "the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has found inadequate.  *Iqbal*, 556 U.S. at 678.

Hardwick has not alleged facts supporting a plausible inference that any of these defendants caused these five particular PFAS to end up in his blood.  Indeed, Hardwick failed to offer any argument to that effect in his brief or when questioned specifically about this point at oral argument.  He elides rather than meets the Supreme Court's requirements as to pleadings and traceability.  Hardwick therefore lacks standing to proceed with his claims.

*        *        *

The district court's certification order is vacated, and the case is remanded with instructions to dismiss the case for lack of jurisdiction.